**PARKER v. MAYNARD BOYCE, Inc.**
**Civil Action No. 5553-WM.**

District Court, S. D. California,
Central Division.

Sept. 18, 1946.

James M. Carter, U. S. Atty., and Ronald Walker and James C. R. McCall, Jr., Asst. U. S. Attys., all of Los Angeles, Cal., for petitioner.

Harry J. McClean, of Los Angeles, Cal., for respondent.

LING, District Judge.

Findings of Fact.

I.  The respondent, Maynard Boyce, Inc., is a corporation engaged in the car-card advertising business, and maintains its office and place of business in Los Angeles, California, within the jurisdiction of this court.

II.  The respondent's business is to rent advertising space on common carrier street cars and buses carrying passengers for hire in Los Angeles; and to display therein the advertising cards and banners of its patrons, for compensation. The respondent also exchanges business of like nature with firms carrying on car-card of "transit" advertising business in other towns, cities and states, through trade associations with which it is affiliated. The respondent's revenue is derived approximately one-half from its local patrons, solicited by its own salesmen, and one-half from out-of-town patrons, whose

business is secured for it through such trade associations.

III. The petitioner, Clarence N. Parker, Jr., was employed as the president and general manager of the respondent corporation, and as such was the executive in charge of all of its affairs, when, on March 4, 1942, as an officer in the United States Army Reserve Corps, he was ordered into, and entered upon active duty in the United States Army. He satisfactorily completed such active duty in the Army, and was released therefrom on April 21, 1946, and received a certificate of such satisfactory completion pursuant to law. On April 30, 1946, he applied to the respondent for re-employment in his former position, and was refused.

IV. The petitioner, Clarence N. Parker, Jr., owns one-fourth of the issued and outstanding stock of the respondent corporation, and is, and has been, its president, serving without pay as such, ever since about January 1, 1941, when he succeeded his father-in-law, the late Maynard Boyce, deceased, as president and general manager of the company. Throughout his military service, said petitioner continued to hold the office of president of the company, but received no salary during that interval, and has received none since his application on April 30, 1946. His salary as general manager on March 4, 1942, was $300 per month, which was the highest salary paid by the company at that time.

V. After the petitioner's departure for active military army duty, his former functions as general manager were divided among an executive committee composed of members of the board of directors, which met thereafter about twice a month and was in charge of general policies of the company; a general manager, who served chiefly as a sales manager; and an office manager, who had charge of the office force, supervised and approved the drafting and execution of display contracts between the company and its patrons, and hired and discharged employees of the company. The work of the salesmen was directed by the general manager, the office force by the office manager, and the work of the "carders," who physically attached and took down the cards and banners of the company's patrons was directed by the head of the respondent's carding department.

VI. The respondent corporation has enjoyed a regular and continuing increase in the volume of its business since it was organized in 1939. In round figures, the respondent's gross income in 1940 was $85,000; in 1941, $125,000; in 1942, $168,000; in 1943, $270,000; in 1944, $528,000; and in 1945, $673,000. The respondent bases its right to refuse to reinstate the petitioner in his former position as general manager on the claim that its operations have increased beyond the ability and experience of the petitioner to serve in his former capacity and with his former authority. Prior to the bringing of the suit, the respondent offered to re-employ the petitioner at his former salary of $300 per month in the position of office manager, a position held since his departure for military duty, by the petitioner's former secretary, in charge of the clerical work and bookkeeping. Her salary now is $350 per month. The respondent later modified this first offer, and agreed to re-employ the petitioner as office manager at a salary of $450 per month, or to give him the title of "general manager" with authority and duties substantially equivalent to those of the present office manager, at his former salary of $300 per month. The reason for these offers of limited, inferior duties and authority was that the respondent desired to retain in active charge of the company's business operations its present general manager, one C. R. Fleming, who receives a salary of $600 per month.

VII. Upon the petitioner's departure for military duty, one Hannegan was first made general manager, but his authority as such was divided with the office manager and the executive committee, as aforesaid. The present general manager, Fleming, was first employed as a salesman in about the year 1943; and he was advanced in about the year 1944, to general manager upon the termination of the employment of Hannegan. Hannegan's salary as general manager was raised from $300 per month to $500 per month salary during his tenure, and Mr. Fleming was raised to $600 per month in 1945.

VIII. There has been a marked general increase in the rate of pay received by all employees of the company since the petitioner's departure for military duty in 1942, and the number of employees of the company has likewise increased from 17 to 30. One pay increase applicable to all employees was approved by the wage stabilization board during the course of active hostilities. A comparison of the wage rates being paid by the company on March 15, 1942, the date of the last payroll carrying the name of the petitioner, and on April 30, 1946, the date of his application for re-employment, shows that in 1942 the company employed four salesmen, two drawing $200 per month and two $300 per month, while in 1946 three salesmen were employed, one drawing $300 per month and two $400 per month. Other wage increases shown by such comparison are: carding department head increased from $125 per month in 1942 to $350 per month in 1946; office manager, from $125 per month in 1942 to $350 per month in 1946; general manager from $300 per month in 1942 to $600 per month in 1946; carders from $76.50 per month in 1942 to $200 per month in 1946, with one drawing $250 per month in 1946.

IX. The respondent corporation is named for its founder, Maynard Boyce. Mr. Boyce launched a similar, successful business in Long Beach, California, in April, 1935, known as the Boyce Motor Coach Advertising Company, of which he was the sole owner. That business has been owned since his death in December, 1940, by his widow. The petitioner, Clarence N. Parker, Jr., was employed by Mr. Boyce in the Long Beach enterprise from its inception, and these two were the only persons employed or engaged in the business at Long Beach for several months. The petitioner solicited and transacted business for the Long Beach enterprise and became thoroughly familiar with all aspects of its operation. Two other employees had been later engaged by the Boyce Motor Coach Advertising Company, when in 1939, the respondent corporation was organized by Mr. Boyce, and it began business in Los Angeles. Mr. Boyce was president and general manager and petitioner Parker was secretary and treasurer of the new corporation. Both were active in its affairs, as well as in the Long Beach enterprise until Mr. Boyce's death in 1940. The petitioner, Parker, succeeded Mr. Boyce as president of Maynard Boyce, Inc., and as general manager of both the Los Angeles and the Long Beach enterprises. He managed both successfully thereafter until he was ordered into active military service. While he was in active charge of the respondent's affairs, the petitioner negotiated valuable contracts with the transit companies of Los Angeles, and also initiated the respondent company's affiliation with the trade associations which now produce about half of its revenue. He also managed to pay the company out of debt, organized its business, and delineated in writing, the functions of the executives who took over his duties as general manager at the beginning of his military absence. Each of the respondent's succeeding general managers understood, at the time of his promotion to that position, that his tenure thereof would cease when the petitioner returned from military duty, and the company itself so informed them. During his military service, the petitioner, as president of the company, was called upon by the board of directors to return to Los Angeles and personally terminate the employment of the first succeeding general manager, which he did.

X. Various wartime factors contributed to increase the business of car-card advertising over other forms of advertising after the respondent's entry into military service. Among these factors were: gasoline rationing, which restricted the use of automobiles and affected the value of highway signs as advertising media, and at the same time, increased the traffic on public passenger vehicles, and the value of advertisements therein; the blackout and the restrictions on electrical apparatus, which affected the manufacture and installation of electric signs; the rationing of newsprint, which reduced the available space for printed advertisements; and the general increase in advertisers' incomes. These factors, as well as the pursuit by the respondent company of the policies initiated and followed by the petitioner as general manager, contributed

largely to the financial success enjoyed by the respondent corporation during the petitioner's absence.

XI. Prior to, and at the time of his departure for military service, the petitioner's duties and authority were to execute, direct and have charge of all affairs of the respondent corporation, under the general direction of the board of directors; to carry out all company policies; to employ, direct the work of, fix the compensation of, and to lay off and discharge, all employees, agents and servants of the company; to authorize and approve all purchases made for the company; to approve and sign all contracts for the acquisition and use of advertising space; to countersign all checks drawn on the company's funds in bank; and to perform, in general, all such other duties and functions as come logically or customarily within the scope of those belonging to the general manager of a corporation's business affairs.

■ XII. The court finds that the petitioner is still qualified to perform the duties of his former position as general manager of the respondent corporation, and was so qualified at the time of his application for re-employment on April 30, 1946; and that the respondent's circumstances had not then, and have not since, so changed as to make either impossible or unreasonable for it to re-employ the petitioner and restore him to that position.

■ XIII. The word "position" as used in the re-employment provisions, 50 U.S.C. A.Appendix, § 308, denotes not merely employment, as such, but also a status in relation to other persons employed by the same employer. Since 1941, there has been a general increase in the rate of pay received by all employees of the respondent corporation, as well as an increase in the monetary value of the duties performed, and to be performed, by the general manager of the respond-

ent's affairs. Said increases are of such degree as to make it unreasonable, considering the salaries now being paid to inferior employees, that the petitioner should be compelled to accept re-employment in his former position at no greater salary than he received before he entered active military service. His former salary is less than the salaries being paid in 1946 to the advanced salesmen, the present general manager, the office manager, and the head of the carding department, and is equalled by the salary now paid to the lowest paid salesman in the company's employ. The court finds that the salary being paid to the present general manager is in line with the salaries paid to other employees of the corporation; and is a part of the position to which the petitioner is entitled to be restored.

## Conclusions of Law.

■ Clarence N. Parker, Jr., was entitled, at the time of his application therefor on April 30, 1946, and is now entitled, to be re-employed by Maynard Boyce, Inc., and restored to his former position as general manager, with the duties and authority specified in Finding No. XI supra, at a salary of $600 per month.

He is further entitled not to discharged from that position by the respondent without cause within one year from the date on which he shall have been restored thereto.

The respondent's action in rejecting and refusing his application for re-employment in his former position, and in continuing such refusal, was and is unlawful.

■ He is further entitled to be compensated for his loss of wages and benefits suffered by reason of the respondent's unlawful action aforesaid, in the sum of $600 per month, for the period from April 30, 1946, until the respondent shall have restored him, or offered to restore him, to such position.