Dennis E. WARD

v.

SCHOOL DIRECTORS, MAINE SCHOOL
ADMINISTRATIVE DISTRICT NO. 56.

Supreme Judicial Court of Maine.

March 28, 1978.

Curtis & Griffin by Theodore S. Curtis, Jr. (orally), Orono, for plaintiff.

Brown & Crowe by Stanley W. Brown, Jr. (orally), Belfast, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

McKUSICK, Chief Justice.

Dennis E. Ward brought this action against the School Directors, Maine School Administrative District No. 56 (MSAD # 56) to recover lost compensation and incidental expenses allegedly caused by the defendant's violation of his reemployment rights as a returning veteran under 5 M.R. S.A. § 555 (1964) (amended 1972). Following a nonjury trial before the Superior Court, Waldo County, judgment was entered for the defendant. The plaintiff appeals.

We sustain the appeal.

During the years 1966–67 and 1967–68, MSAD # 56 employed the plaintiff as a teacher of junior high school mathematics in Searsport, Maine. On March 20, 1968, Ward signed a contract with the defendant for the upcoming 1968–69 school year. The $6300 salary due him under that contract represented a "basic annual salary rate" of $5750 plus an additional sum of $550 for "special and specific assignments during the year," namely, "cross-country ($200) and Jr. High athletics ($350)." Ward had taught for only three days of that 1968–69 school year, however, when he was drafted into the United States Army. He promptly notified the defendant of his intention to take a leave of absence and volunteered for service in the United States Navy.

Plaintiff served in the Navy from September 1968 until his honorable discharge on September 9, 1972. Several times during his years of service he substituted in the Searsport schools while home on leave. On July 2, 1972, Ward wrote the school superintendent, James Doughty, that he had "just received notice that I will be separated from active duty on the 9th of Sept[ember]" and he expressed some interest in possibly exercising his reemployment rights.[1] Superintendent Doughty responded to Ward's letter on July 12, 1972, by offering him a probationary contract as a teacher of junior high math and science for the 1972–73 school year at a salary of $7300. Believing that he lacked the necessary educational credentials and state certification, Ward refused the offer in an August 1 letter.

1. The full text of that letter was as follows:
"I just received notice that I will be separated from active duty on the 9th of Sept.
"At present I'm not sure of my future plans, nor am I sure of my reemployment rights, but if I am entitled to reemployment and if I have difficulty in finding a teaching position, I may want to exercise that right.

"I will be checking into these matters as soon as possible, and if in fact I do have reemployment rights, I will try to inform you of my intentions at the earliest possible date. Also, if you have any information concerning this matter, it would be appreciated."

In mid-August plaintiff telephoned Superintendent Doughty from California. He explained that he had just received a copy of Maine's law governing veterans' reemployment, and he told the superintendent that he "wanted to exercise that right." The superintendent called him back the following day, however, to report that MSAD # 56 believed it had already lived up to its obligation by offering Ward the junior high school position which he had refused. Doughty advised Ward to place his demand in writing and that upon receipt of such a letter he would take the matter up again with the school directors.

Following his September 9 discharge in California, plaintiff arrived back in Searsport on September 16, 1972. He immediately sought advice from State educational and veterans officials in an attempt to determine the nature and extent of his reemployment rights as a returning veteran. As a result of that advice, he sent Superintendent Doughty a letter on October 6 in which he formally "request[ed] reemployment with MSAD # 56 as entitled under the provisions of Section 555 of Title 5 of the Revised Statutes of the State of Maine as amended." Ward's request was taken up by the board of directors of MSAD # 56 at an October 10 meeting, but no decision was made at that time. On October 19 Ward met with Superintendent Matthews, Doughty's successor, at which time Ward was offered a second contract teaching junior high math and reading at a salary of $7600. Believing that the salary provision of that contract did not reflect his earned seniority rights under section 555, Ward again refused. As negotiations continued between the parties, Ward commenced teaching on November 6 without a contract. On November 16 he finally signed a one-year contract teaching junior high math and science at a salary of $8500.

Although he signed the contract, both during and after the negotiations Ward expressed dissatisfaction with the defendant's steadfast refusal to give him any "special and specific assignments" equivalent to those for which he was to be paid $550 under his 1968–69 teaching contract. After signing the contract, Ward personally argued his claim before the school directors but to no avail.

Plaintiff initiated this action in Superior Court on March 15, 1973. In his complaint he sought damages of $1967.94, representing (1) $1373.14 for lost compensation from September 16 to November 6, 1972; (2) $550, the amount for "special and specific assignments" similar to those in his 1968–69 contract; and (3) incidental expenses of $44.80.[2]

### I. Right to Damages for Lost Teaching Salary

The Maine veterans' reemployment statute, 5 M.R.S.A. § 555 (1964) (amended 1972), guarantees certain rights of reemployment to

"any employee, regularly employed in other than a temporary position for a period of at least 6 months . . . by any county, municipality, township or school district within the State [who] shall in time of war, contemplated war, emergency or limited emergency, enlist, enroll, be called or ordered, or be drafted into the Armed Forces of the United States or any branch or unit thereof, or shall be regularly drafted under federal manpower regulations, . . . ."

As to an employee falling within the statutory definition,

"he shall not be deemed or held to have thereby resigned from or abandoned his said employment, nor shall he be removable therefrom during the period of his service."

Further,

"Such employee while in the Armed Forces of the United States or still em-

---

**2.** Plaintiff styled his complaint in the Superior Court as brought "pursuant to Rule 80B, Maine Rules of Civil Procedure." The plaintiff requested, however, not *review* of the school board's decision but money damages for defendant's failure to accord him his full rights under 5 M.R.S.A. § 555 (1964) (amended 1972). The case was tried in all respects as an original Superior Court suit for money damages.

ployed after draft under federal man power regulations shall be considered as on leave of absence without pay and, for the purpose of computing time in regard to pension rights, annual and sick leave accumulation, and seniority, shall be considered during the period of his federal service as in the service of the governmental agency by which he was employed at the time of his entry into such federal service. *Such employee if he reports for duty* within a 90-day period from the date of his separation under conditions other than dishonorable from the Armed Forces of the United States . . . *shall*

"1. Qualified. If still qualified to perform the duties of such position, *be restored to such position* or to a position of like seniority, status and pay; . . .." (Emphasis added)

The Maine legislature's enactment of veterans' reemployment legislation in 1939, see P.L. 1939, ch. 314, § 1 (eff. July 31, 1940), guaranteed employees of the State of Maine and various political subdivisions thereof rights analogous to those provided by federal legislation[3] to returning veterans who had left positions of employment with the "United States Government, its territories, or possessions or political subdivisions thereof, or the District of Columbia,"[4] or private employers.[5] In construing the federal act, upon which the Maine statute is obviously modeled, the Supreme Court of the United States has observed that its basic intent was to assure "that he who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job." *Fishgold v.*

*Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 1240 (1946). *See also Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). Thus, the returning veteran is entitled to be restored not merely to that job which he left for military service, but to that job, or one similar, with "seniority" rights computed as if the veteran had been continuously employed. "Seniority" itself is broadly defined in view of the remedial design of the veterans' legislation:

"The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress . . . . That intention was to preserve for the returning veterans the rights and benefits which would automatically have accrued to them had they remained in . . . employment rather than responding to a call of their country." *Accardi v. Pennsylvania R.R. Co.,* 383 U.S. 225, 229–30, 86 S.Ct. 768, 771, 15 L.Ed.2d 717, 721 (1966).

In other words, a returning veteran is entitled to be restored to a position "which on the 'moving escalator' of terms and conditions affecting his particular employment would be comparable to the position that he would have held if he had remained continuously in civilian employment." *Jackson v. Beech Aircraft Corp.,* 517 F.2d 1322, 1325 (10th Cir. 1975).

When Dennis Ward returned to Searsport following his honorable discharge from the Navy in September 1972, he was entitled to certain rights under section 555 of Title 5,

---

**3.** *See* Selective Training and Service Act of 1940, ch. 720, § 8, 54 Stat. 890 (1940) [current version, as amended, at 38 U.S.C.A. § 2021 (1958 ed.) (1977 Supp.)].

**4.** *See* 38 U.S.C.A. § 2021(a)(A) (1958 ed.) (1977 Supp.).

**5.** *See* 38 U.S.C.A. § 2021(a)(B) (1958 ed.) (1977 Supp.). Prior to 1974 the statute declared it to be the "sense of Congress" that employees of a State and its political subdivisions should be entitled to the identical veteran's reemployment rights which the federal statute guaranteed to employees of federal, and private, employers. Congress extended the protections of

the federal statute to employees of a State and its subdivisions in 1974. *See* Vietnam Era Veterans' Readjustment Assistance Act of 1974, ch. 43, § 404(a), 88 Stat. 1578 (1974), codified at 38 U.S.C.A. § 2021(a)(b) (1958 ed.) (1977 Supp.). Section 2021(c) of that Act further declares that "[t]he rights granted by . . . this section to persons who left the employ of a State or political subdivision thereof and were inducted into the Armed Forces shall not diminish any rights such persons may have pursuant to any statute or ordinance of such State or political subdivision establishing greater or additional rights or protections."

analogous in scope to those available to qualified employees under the federal act. At the time he went into service, Ward was just starting upon his third year of teaching for MSAD # 56, and he had a year's contract under which he actually taught only three days. Thus, at the time Ward enlisted, he was "regularly employed in other than a temporary position for a period of at least 6 months."

Defendant does not claim that Ward was *not* entitled under section 555 to be restored to his former teaching position or to a position of like "seniority, status and pay." Ultimately, defendant did restore Ward to a teaching position which Ward found satisfactory in all respects, except for the defendant's refusal to give him "special and specific assignments" with a salary of $550.[6] In that contract, the defendant district conceded the plaintiff's right to have his salary computed as if he had been in the defendant's continuous employ for purposes of acquiring additional years of experience. The plaintiff argues, however, that the contract should have commenced as of September 16, the date of his return to Searsport. The defendant, on the other hand, urges that we uphold the decision of the Superior Court refusing compensation on the ground that "the indecision of the plaintiff prevented the defendant from offering him a job prior to November 6, 1972."

We disagree with both parties.

■ According to the terms of section 555, the substantive rights which it confers do not arise automatically upon the employee's separation from service. The returning veteran's right to be restored to a position by his former employer matures "if he *reports for duty within a 90-day period from the date of his separation*." (Emphasis added) When the veteran does "report for duty," within the meaning of the statute, he "*shall . . . be restored* to such position or to a position of like seniority, status and pay." (Emphasis added) It is the veteran's reporting for duty that triggers the employer's statutory obligation.

■ Although plaintiff claims that the defendant was obliged to reemploy him as of September 16, 1972, the facts show that as of that date he had not complied with the threshold requirement that he "report for duty." In mid-August 1972 he did unequivocally tell Superintendent Doughty that he wished to exercise his reemployment rights. At that time, however, he was located in California, and he did not give any clear indication to the superintendent of the date when he would be back in Searsport to resume teaching. The school district was, of course, aware from earlier communications that plaintiff's discharge would occur on September 9. Plaintiff, however, was not even back in Searsport on that date and so he cannot be taken to have then reported. He did arrive back in Searsport on September 16, but there is nothing whatever in the record to show that he did anything to present himself to MSAD # 56 ready to teach or even that the school authorities knew he was back in town.

■ On October 6, however, the plaintiff took action that clearly constituted reporting for duty. He wrote the superintendent from a Searsport address asking reemployment. By that letter the school district knew without any uncertainty he was immediately available and ready to work. Nothing remained for him to do; he had reported for duty. In mid-August he had unequivocally asked for his job back, and on October 6 he in effect said, "I am here and ready to teach."

The statute's mandate is plain and unambiguous that when the employee "reports for duty" he "shall" be restored to a position. Defendant committed a breach of that obligation on October 6, 1972 when it failed to restore Ward to his teaching position. He is entitled to damages for lost compensation from October 6 to November 6, 1972. *Cf. Parker v. Maynard Boyce, Inc.,* 74 F.Supp. 581 (S.D.Cal.1946); *Lee v. Remington Rand, Inc.,* 68 F.Supp. 837 (S.D.Cal. 1946); *Dodds v. Williams,* 68 F.Supp. 995 (D.Ariz.1946), *aff'd,* 163 F.2d 724 (9th Cir. 1947).

---

6. The plaintiff's claim to these further assignments is discussed later in this opinion.

## II. Right to Damages for $550 Additional Pay for Special and Specific Assignments

■ The plaintiff asserts that the district also violated his statutory rights by refusing to supplement his basic teaching job (for which he was paid $8500 annually) with "special and specific assignments," that is, supervision or coaching of extracurricular activities, such as he had a year's contract for at the rate of $550 when he went into service. We agree.

From the facts in the record, it appears that the assignments to particular extracurricular activities, with commensurate remuneration, are made at the discretion of the superintendent on a year-to-year basis. No teacher acquires tenure in any given activity, and none has a vested right to be assigned the same activities in future years. These characteristics of the "special and specific assignments" were the same in both 1968 and 1972. Whereas in 1968 the assignments were made as part of a single unitary contract, in 1972 as a result of collective bargaining between the teachers' union and the school district, the "special and specific assignments" were the subject of separate negotiation and contract. Ward's 1972 teaching contract contained no such assignments, and he was given no separate contract for any.

The Superior Court ruled that the discretionary and untenured nature of special assignments relieved the defendant of any obligation to restore Ward in 1972 to a position with respect to the assignments similar to that which he held in 1968. Such characteristics are not, however, the criteria which the statute sets down by which to measure the employee's right to reinstatement. Section 555 states in clear and unambiguous terms that an "employee" is anyone "regularly employed [by any of the designated units] in *other than a temporary position* for a period of at least 6 months . . . ." (Emphasis added) The word "temporary" is expressly defined:

> "Temporary for the purpose of this section shall be defined to mean employment based on a seasonal or on-call basis or employment based on a contract of less than 6 months' duration."

The plaintiff's special and specific assignments in 1968 constituted in practical fact a second job, separate from his teaching job, as to which plaintiff was an "employee" of the school district. Under the 1968–69 contract, that second job had been awarded to him for a period of one year. Furthermore, the job was "other than temporary." The special and specific assignments were not assigned on a "seasonal" or "on-call" basis, but on an annual basis. Such a position does not fall within the exclusive definition of "temporary" contained in section 555.[7]

Plaintiff had a right, therefore, to be reemployed in special and specific assignments to be performed in the 1972–73 school year at a compensation of at least $550.[8]

## III. Incidental Damages

■ The plaintiff contends that the defendant's breach of its statutory duty proxi-

---

7. The federal statute does not contain an express definition of what constitutes a position which is "temporary" for purposes of the phrase "[i]n the case of any person . . . who leaves a position (other than a *temporary* position) in the employ of any employer . . ." (Emphasis added) 38 U.S.C.A. § 2021(a) (1958 ed.) (1977 Supp.). Decisions addressing the issue under the federal statute suggest that the controlling consideration is whether, irrespective of any contract of employment, the employee had a reasonable expectation that his position of employment was not for a limited or fixed period of duration but for a continuous and indefinite length of time. *Moe v. Eastern Air Lines, Inc.*, 246 F.2d 215 (5th Cir. 1957), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958). *See generally, Cox v. International Longshoremen's Assoc., Local 1273*, 343 F.Supp. 1292, 1298 (S.D.Tex.1972), *aff'd*, 476 F.2d 1287 (5th Cir. 1973), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973). In view of the express definition of "temporary" in section 555, we need not be concerned with determining the relevancy of the test developed in applying the federal statute.

8. The plaintiff makes no claim that he is entitled to more than the $550 rate set in his 1968–69 contract, even though seniority or rising salary scales might plausibly justify a higher figure.

mately caused him incidental damages in the amount of $44.80, representing his travel expenses to and from Augusta in the fall of 1972 to seek advice with respect to his reemployment rights. While section 555 should be construed broadly to authorize adequate relief to an aggrieved veteran, we see no basis for awarding damages of this nature. These expenses in seeking legal advice prior to litigation are no more recoverable than litigation expenses, such as the plaintiff undoubtedly incurred in attending the taking of his own deposition or incurred in attorneys fees before the Superior Court and now on appeal. We deny that this part of the plaintiff's claim.

## IV. *Interest*

In his brief on appeal the plaintiff made a general request for an award of "damages, interest and costs consistent with the record." The second sentence of Rule 76(e), M.R.Civ.P., provides:

> "Where a judgment is modified or reversed with a direction that a judgment for money be entered in the lower court, the rescript shall contain instructions with respect to allowance of interest if the prevailing party's claim to interest has been brought to the attention of the Law Court by brief or oral argument."

By operation of law, the plaintiff, as the prevailing party in this action, is entitled to prejudgment interest at the rate of 6% per year from the date his complaint was filed to the date of his judgment. He possesses that right whether or not he expressly brings a claim for prejudgment interest to the attention of this court on appeal. *Rand v. B.G. Pride Realty,* Me., 360 A.2d 519, 523–24 (1976).

A judgment awarding plaintiff money damages will be entered for the first time on remand. This court has construed the Maine statute providing postjudgment interest, 14 M.R.S.A. § 1602 (1964) (repealed and replaced by P.L. 1977, ch. 147), to mean "that one is entitled to interest as a matter of right at the rate of 10% per year, *only when one becomes a judgment creditor.* Such a status is not conferred upon a liti-

gant until judgment is entered." (Emphasis added) *Ginn v. Penobscot Co.,* Me., 342 A.2d 270, 278 (1975). Plaintiff has not yet attained the status of the judgment creditor. Postjudgment interest will run only from the date the Superior Court enters judgment for the plaintiff on remand.

The entry must be:

Appeal sustained.

Remanded to the Superior Court for determination of damages and entry of judgment for the plaintiff in accordance with this opinion.

Costs on appeal allowed to the plaintiff.

DELAHANTY and NICHOLS, JJ., did not sit.