HORACE COLE, and others, in equity,

*vs.*

B. FRANK BRADBURY, and others.

Oxford.    Opinion April 2, 1894.

*Easement.    Adverse Use.    Aqueduct.    Deed.*

An uninterrupted adverse use of the water of an artificial aqueduct for twenty years is sufficient to create a prescriptive right to the enjoyment of it to the extent of such use the same as if the water had flowed in a natural channel. And the term of enjoyment requisite for the prescription is deemed to be uninterrupted when it is continued from ancestor to heirs and from seller to purchaser.

When such an easement, though not originally belonging to an estate, has become appurtenant to it either by grant or prescription, a conveyance of that estate will carry with it such easement whether mentioned in the deed or not, although it may not be necessary to the enjoyment of the estate by the grantee.

ON REPORT.

Bill in equity, originally brought by Horace Cole, and afterwards amended to allow his three children to become co-plaintiffs, in which the complainants allege in substance, that they are possessed of the right in common with the respondents, to take and use water from a certain spring in Norway village, by means of a certain aqueduct of which the respondents claim the sole ownership; that the rights of the plaintiffs to use the water are similar, although not the same, nor acquired in the same manner; that the complainants use said water by means of a pipe connecting the premises of said Horace Cole with the main line of said aqueduct at a point on the land of the respondents, Bradbury; that the respondents notified the complainant Horace Cole that they should prevent his further use of said water by cutting off said pipe, November 1st, 1891; thereupon the complainants asked for a temporary, and also a permanent injunction, restraining the respondents, their attorneys, servants and agents, from cutting off or interfering with said pipe, or with the rights of the complainants to take and use water from said spring and said aqueduct.

A temporary injunction was granted as prayed for; the respondents answered the original bill, and answered and also demurred to the amended bill; replications were filed, and the demurrer was joined.

The case was heard on bill, answers, demurrers and testimony.

The facts are stated in the opinion.

*Harry R. Virgin*, for plaintiffs.

*C. E. Holt, Herrick and Park*, for defendants.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

WHITEHOUSE, J.    This is a bill in equity brought to restrain the defendants from severing the supply pipe connecting a certain aqueduct and spring of water in the town of Norway with the dwelling-house of the plaintiff, Horace Cole, who claims that the right to take and use water from the spring, in common with the defendants, by means of the aqueduct, was acquired by

prescription by his predecessors in title, and passed to him as appurtenant to the premises by deed of November 1, 1873. In the amended bill his three children become co-plaintiffs, claiming an interest in the aqueduct as residuary legatees of Adeline C. Denison; and a further claim is also set up in favor of Horace Cole as a grantee of other residuary legatees of the same testator.

The defendants claim the exclusive ownership of the aqueduct and deny that either Horace Cole, or his co-plaintiffs, ever acquired any such right by grant, prescription or otherwise. The case comes to this court on report.

I. The claim asserted in favor of the plaintiff, Horace Cole, that a prescriptive right to use the water from this aqueduct was acquired by his predecessor in title and passed to him by deed, will be first considered.

The testimony respecting the arrangement under which the aqueduct was originally constructed is somewhat conflicting. It appears that the aqueduct was laid as early as the year 1852, and that the spring in question was located on land then owned by Adna C. Denison. The defendants claim that Adna C. and his brother, Isaac A. Denison, built the aqueduct primarily for the accommodation of their dwelling-houses at their joint expense; and deny that any other person contributed anything whatever in the construction of it, or acquired any interest in it, or absolute right to use water from it. They concede, however, that there was "an understanding with Moses Bartlett," the predecessor in title of Horace Cole, "that when there was plenty of water he could use some by paying a portion of the expense of keeping it in repair;" but "when the water was short" they "had the right to cut it off at any time." On the other hand, the plaintiffs claim that Bartlett was one of the original builders and proprietors of the aqueduct, and enjoyed the use of it as one of the owners during his occupancy of the premises until the conveyance to Judge Virgin, June 4, 1853; that Judge Virgin in like manner continued to enjoy the right to use the water from that time until August 12, 1872, as a legal appurtenance of his estate; and that Pamelia Cole, his successor in title, thereafter continued to use it as a matter of right until the conveyance to

Horace Cole in 1873. It is, therefore, contended that even if Bartlett's interest was not an easement which had become legally attached to the premises when he conveyed to Judge Virgin in 1853, it unquestionably ripened into a legal right by adverse use on the part of Judge Virgin and Mrs. Cole for more than twenty years prior to November, 1873, and passed by deed of that date to Horace Cole as appurtenant to the estate. Finally, it is said that Horace Cole continued to use the water as of his own right, without interruption or threat of interruption, from 1873 until this controversy arose in 1891; so that there was uninterrupted adverse use of the aqueduct by Cole and his predecessors for a period of thirty-nine years.

It is now settled law that the uninterrupted adverse use of the water of an artificial aqueduct for twenty years is sufficient to create a prescriptive right to the enjoyment of it to the extent of such use in the same manner as would have been the case if the water had flowed in a natural channel. *Tinkham* v. *Arnold*, 3 Maine, 123; *Watkins* v. *Peck*, 13 N. H. 370; Wash. on Eas. 430; *Dority* v. *Dunning*, 78 Maine, 381. And the term of enjoyment requisite for the prescription is deemed to be uninterrupted when it is continued from ancestor to heirs, and from seller to buyer. In other words, the several periods of enjoyment of an easement by successive occupants holding by privity of estate may be counted together to make up the requisite twenty years. All that would be required by the possessor would be evidence that the possession had been legally continued from one owner to the other. Wash. Eas. 176; Gould on Waters, § 335; *Leonard* v. *Leonard*, 7 Allen, 280; *Sargent* v. *Ballard*, 9 Pick. 256. It is also an established rule of conveyancing that the word "appurtenance" in the *habendum* of a deed "will not be construed to convey anything except what was legally appurtenant to the land in the hands of the grantor, and, therefore, will not be extended so as to convey an easement in the land of another, which by reason of not having ripened into a legal right had not become legally attached to the premises conveyed, unless accompanied by proper words describing it and showing the intention of the grantor to pass

it.  *Swazey* v. *Brooks*, 34 Vt. 451 ; *Spaulding* v. *Abbott*, 55
N. H. 423.  But when an easement, although not originally
belonging to an estate, has become appurtenant to it either by
grant or prescription, a conveyance of that estate will carry with
it such easement whether mentioned in the deed or not, although
it may not be necessary to the enjoyment of the estate by the
grantee.  Wash. on Eas. 40 and authorities cited ; *Dority* v.
*Dunning*, 78 Maine, 384.

In the case at bar, it is unnecessary to consider whether
Bartlett's interest in 1852 had become legally attached to the
estate, or whether it was only an inchoate prescriptive right at
that date ; for while the question is not entirely free from diffi-
culty, there is on the whole a decided preponderance of evidence
in favor of the plaintiffs' contention that, after the deed to Judge
Virgin in 1853, there was an uninterrupted adverse enjoyment
of the easement for more than twenty years, until the conveyance
to Horace Cole in 1873, when, having matured in a legal right and
become appurtenant to the estate, it passed by the deed to Cole.
It is conceded that the Bartlett house received a supply of water
from this aqueduct without interruption for thirty-nine years.
It is not in controversy that prior to the purchase of O'Brien
in 1876, a period of some twenty-four years, no rent was paid
for the water, and it is not established by competent evidence
that rent was ever paid for water from this aqueduct by any
owner or occupant of the Bartlett premises.  Mrs. Bartlett, the
wife of Moses Bartlett, testifies that her husband and herself
were in the occupation of the premises from 1849 to the time
of the conveyance to Judge Virgin in 1853 ; that in 1851, or
1852, she heard Isaac A. Denison propose to her husband that they
should, " take water in logs from the spring on Adna C. Denison's
land and bring it to Mr. Bartlett's and his house for the benefit
of both of them ; that both Mr. Bartlett and Mr. Denison said
they would do it, and Mr. Bartlett said he would survey the line
and superintend the work ; that she understood that they had a
right to take all the water they needed from that spring, and
that they should share jointly all the expenses arising from it ;
that no water rent was ever paid by them or demanded of them,

and that she never heard their right to take water from the aqueduct denied or questioned by any one prior to the time of giving her deposition.

The testimony of Judge Virgin, who married a sister of Horace Cole, is unequivocal and conclusive respecting the character of his enjoyment of the easement for a period of nineteen years. He says: "Among the inducements held out to me to purchase that place was the aqueduct which brought the water into the dining-room of the house. . . . . I was frequently out where they were preparing it to be laid and saw Bartlett himself taking an active part in the construction of the aqueduct. . . Bartlett assured me that he helped pay for the original construction of the whole thing. . . . I always claimed to hold the right to that water as a matter of right against all comers, and it was never objected to by the Denisons or anybody else while I was in possession. I never paid any rent for the use of it and never was asked to pay any, and kept my own portion of the aqueduct from my own house to the main line in repair at my own expense."

The plaintiff, Horace Cole, succeeded Judge Virgin in the occupancy of the house from the summer of 1871 to November 1, 1873, as tenant under Judge Virgin and Mrs. Cole successively, and thereafter as owner of the premises. It does not appear that there was any change in the manner of using the water during that period. Cole testifies that, after he bought the premises, he always claimed the right to use the water from this aqueduct as one of the appurtenances of the property; that he contributed his proportional part in labor and money from time to time toward the necessary repairs of the aqueduct, as the same were made known to him; and that his use of the water as a matter of right was not questioned by any one prior to 1891. It also appears that the defendants and all the other parties interested in the aqueduct, lived in such close proximity to the plaintiff's house and had such personal relations with its successive occupants, that they must have had knowledge of the character and extent of the use of the water there.

A patient and critical examination of all the other evidence fails to disclose any facts and circumstances of sufficient weight

VOL. LXXXVI.    24

to overcome the force of the plaintiffs' evidence on this branch of the case; and the conclusion is irresistible that the easement enjoyed by Moses Bartlett and his wife had ripened into a legal right by adverse and uninterrupted use for twenty years prior to November 1, 1873, and passed to Horace Cole, as appurtenant to the premises by his deed of that date. If further time were required to complete the requisite period of prescription, it is equally well established that Cole used the water continuously as a matter of right for nineteen years after he purchased the premises. But he properly claims it under his deed of November 1, 1873, as a right which had already matured and as an appurtenance to the land; and he is entitled to take and use the water from the aqueduct and spring in question as it was customarily taken and used in connection with his premises from June 4, 1853, to November 1, 1873.

II.   This conclusion in regard to the rights of Horace Cole under his deed renders a decision of the question raised by the claim of the co-plaintiffs, and the further claim of Horace Cole under the residuary legatees of Adeline C. Denison of little or no practical importance. This amendment was doubtless introduced *ex majore cautela*, to meet a possible contingency that did not arise.

It appears that, in 1862, Adna C. Denison conveyed to Adeline C. Denison his dwelling-house and land connected therewith, and in 1865, one undivided half of the spring in question and right of way from the same, and that, in 1888, Adeline C. Denison conveyed to the defendant, B. F. Bradbury, the same dwelling-house and also her interest in the aqueduct, " reserving nevertheless the right for Horace Cole and his heirs to draw and use water from said aqueduct as he now uses it, and for the owners of said aqueduct to enter upon the premises hereby conveyed for the purpose of repairing said aqueduct."

Inasmuch as Horace Cole was not a party to this deed, it is not claimed that this " reservation " was effectual, *proprio vigore*, to secure to him the right to draw and use water from this aqueduct, (*Murphy* v. *Lee*, 144 Mass. 374; *Hill* v. *Lord*, 48 Maine, 95); but it is insisted that, in order to effectuate the

intention of the parties upon familiar principles of interpretation (*Engel* v. *Ayer*, 85 Maine, 448; *Stockwell* v. *Couillard*, 129 Mass. 223), it should be construed as an exception of another and distinct right in the aqueduct which thus remained in Adeline C. Denison as a part of her former estate, and passed by will to her residuary legatees. It has been seen, however, that the clause of reservation in question contains an express recognition of some existing right or privilege then enjoyed by Horace Cole. It clearly was not intended to reserve anything for the use of the grantor herself. She did not desire to retain anything in herself as of her former estate. It reserved, or more properly speaking, excepted from the conveyance whatever rights were then possessed by Horace Cole, and thus excluded any interest previously acquired by him from the operation of the covenants in her deed. *Stockwell* v. *Couillard*, and *Hill* v. *Lord*, *supra*. Adeline C. Denison retained no interest in the aqueduct to bequeath to her residuary legatees.

As to the co-plaintiffs, the bill is dismissed. As to Horace Cole the bill is sustained with costs.

*Perpetual injunction to issue as prayed for.*