MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2015 ME 165
Docket:       Kno-14-358
Argued:       April 9, 2015
Decided:      December 31, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

DARLENE F. EDWARDS et al.

v.

CYNTHIA S. BLACKMAN et al.

JABAR, J.

[¶1]  Darlene F. Edwards and Lewis M. Edwards III appeal from a judgment entered in the Superior Court (Knox County, *Hjelm, J.*) concluding, inter alia, that (1) a 1986 dedication and its acceptance by the Town of Owls Head created a public easement over the way and cul-de-sac located on the Edwardses' property; and (2) a 1924 conveyance created an easement over the beach located on the Edwardses' property, benefiting the property currently owned by Cynthia S. Blackman; her brother, Eliot A. Scott; and their parents, Nathalie M. Scott and Willis A. Scott Jr. (collectively, the Scotts).  The Edwardses argue that the court erred in finding that their predecessor intended to create a public easement over the way and cul-de-sac, and in concluding that the dedication petition sufficiently described the property.  The Edwardses also contend that any beach easement

2

rights created by the 1924 conveyance neither burden their property nor benefit the property owned by the Scotts.

[¶2] We reject these contentions and affirm the judgment in its entirety.

## I. BACKGROUND

[¶3] The following facts were found by the court and are supported by the evidence presented at trial. *See Testa's, Inc. v. Coopersmith*, 2014 ME 137, ¶ 2, 105 A.3d 1037. The Scotts jointly own inland property located at 34 Coopers Beach Road in Owls Head.[1] The Edwardses jointly own waterfront property located at 70 Coopers Beach Road, near the Scotts' property. From Coopers Beach Road a way extends across the Edwardses' property, terminating in a cul-de-sac that is located partly on the Edwardses' property and partly on the property of the abutting landowner, the Arthur Titcomb Living Trust (Titcomb).[2]

A. The 1924 Conveyance

[¶4] The properties now owned by the Scotts and the Edwardses formerly were included in a tract of land owned by Cora E. Perry. In 1924, Perry conveyed a portion of her tract to Ensign Otis. Perry's deed to Otis described the property

---

[1] Although Eliot Scott's wife, Constance Scott, was named as a defendant, there is no evidence that she has a record ownership interest in the property located at 34 Coopers Beach Road, and she does not claim any interest in either the way and cul-de-sac or the land above the high-water mark on the Edwardses' property. Because Constance's interests differ from the interests of the other individual defendants, references to "the Scotts" herein do not include her.

[2] Titcomb is not a party to this action; its rights to use the way and cul-de-sac are not in issue here.

conveyed by reference to a plan of Coopers Beach "made by A.D. Blackin[]ton in 1882" (the Blackinton Plan). Otis's deed also granted the "privileges of all streets laid out on said plan and the free use of the beach for bathing and boating purposes." Otis's deed did not describe the location of "the beach," nor did the Blackinton Plan label or otherwise designate the location of a particular beach area.

[¶5] The Scotts' property at 34 Coopers Beach Road includes some of the land that Perry conveyed to Otis in 1924, and some land that was not involved in that 1924 conveyance. The Scotts' deed to 34 Coopers Beach Road expressly conveys only a single easement providing "a right-of-way over the Coopers Beach Road" to the property; it does not mention any beach rights.

[¶6] At the time of her 1924 conveyance to Otis, Perry's holdings included the waterfront property that is now owned by the Edwardses. The Blackinton Plan depicts a waterfront lot, numbered 24, contiguous to the Edwardses' property. These adjacent properties have differently described waterfront boundaries. The deeds in the Edwardses' chain of title describe their property's waterfront boundary in a manner that locates that boundary at the low-water mark. The deeds in the chain of title for the land corresponding to lot 24 describe that lot's waterfront boundary in a manner that locates that boundary at the high-water mark.

4

B.    The 1986 Dedication and Acceptance

[¶7]   From 1973 to 1986, the Town of Owls Head (the Town) hired contractors to sand and snowplow Coopers Beach Road, which was then a private road composed of four separate branches.  During this period, the Town included in its winter maintenance of Coopers Beach Road the way and cul-de-sac located on the Edwardses' property.  After learning that it was not allowed to expend public funds to maintain private roads, the Town announced its intent to cease plowing private roads at the end of the 1985 to 1986 winter season.

[¶8]  In 1986, twenty-two individuals signed a two-page petition proposing that the Town accept the dedication of "Coopers Beach Road" as a public easement.  The petition's first page identified its signatories as "owners of property consisting of Coopers Beach Road."   The petition's second page identified a different group of signatories as "abutting property owners on Coopers Beach Road."  Five individuals signed the first page and seventeen signed the second.

[¶9]  In 1986, John McLoon owned the property that is now owned by the Edwardses.  When the dedication petition was circulating, a Town official spoke with McLoon about the petition's purpose and consequences.  The official told McLoon that if the road were accepted as a public easement, the Town would continue to plow and sand it, and others would be allowed to use it.  The official

explained that McLoon would need to sign the petition if he wanted the road to be dedicated, and McLoon signed the petition's second page.[3]

[¶10]  In August 1986, the Town held a special meeting to vote on the acceptance of multiple public easement roads, and voters accepted the dedication of public easements over ten private roads, including Coopers Beach Road.  Since that vote, the Town has treated the way and cul-de-sac located on the Edwardses' property in the same manner that it has treated all parts of the network of roads that were formerly collectively called Coopers Beach Road.

[¶11]  The record also supports the following facts, which were found by the court in an order entered on May 7, 2013.

[¶12]  In 1996, the Town voted to approve the 1986 acceptance of a public easement over Coopers Beach Road.  Available at the 1996 meeting were tax maps that a selectman had "marked to depict the location of the Cooper's Beach Road dedication based on his understanding of the 1986 acceptance."  One of these maps was admitted as an exhibit at trial and shows a hand-drawn line (beginning at lot 57) that runs the length of Coopers Beach Road and extends over the way and cul-de-sac located on the Edwardses' property (lot 67).[4]

---

[3]  Titcomb's predecessor-in-title did not sign any part of the petition.

[4]  At trial, Darlene Edwards and her title expert both testified that the Town's tax map shows the Edwardses' property at lot 67, the Titcomb property at lot 68, and the Scotts' property at lot 58-2.

6

[¶13]  To assist the reader, we include a black and white copy of that tax map below.



C.    Procedural History

[¶14]  In November 2011, the Edwardses sued the Scotts and the Town, seeking a declaratory judgment that the Scotts have no right to use and the Town has no interest in the Edwardses' property.  The Scotts counterclaimed, asserting rights to the way and beach located on the Edwardses' property by virtue of

prescriptive and deeded easements and common law rights to the intertidal zone. The Town did not file a counterclaim but contested the Edwardses' claim that it had not acquired a public easement over the way and cul-de-sac located on the Edwardses' property.

[¶15] In October 2012, the Edwardses moved for summary judgment on their claims against the Town, arguing that the 1986 dedication petition had not described the location of the dedicated property with enough specificity to satisfy 23 M.R.S. § 3025 (2014), which sets out the process by which property is dedicated and accepted for highway purposes. In an order entered on May 7, 2013, the court ruled that, although the northern terminus of the road remained to be determined, the description of the dedicated way as "Coopers Beach Road" was sufficient to meet the statutory standard for an acceptance.

[¶16] The court held a six-day bench trial in December 2013 and January 2014. In its post-trial brief, the Town argued that the Edwardses' challenge to the validity of the dedication was barred by, among other things, the thirty-day limitations period for review of governmental action contained in M.R. Civ. P. 80B(b). In its judgment, entered on July 30, 2014, the court reached the merits of the dedication issue, reasoning that the Rule 80B deadline would only apply if the dedication had "aggrieved" the Edwardses' predecessor by creating an easement over the way and cul-de-sac. *See* 23 M.R.S. § 3029 (2014) (allowing any

8

person "aggrieved" by an act of the municipal legislative body in a dedication proceeding to bring an appeal to the Superior Court pursuant to M.R. Civ. P. 80B).

[¶17]  On the merits of the dedication issue, the court found that, at the time of the dedication, Coopers Beach Road had included the way and cul-de-sac located on the Edwardses' property, and that the Edwardses' predecessor, McLoon, had intended to dedicate the disputed way to public use.  Reiterating its earlier ruling as to the dedication's statutory sufficiency, the court concluded that the Town had acquired, by dedication and acceptance, a public easement over the way and cul-de-sac located on the Edwardses' property.[5]

[¶18]  On the merits of the Scotts' beach easement claims, the court found that Perry had intended to grant Otis an easement over the beach that is now owned by the Edwardses, and determined that the benefits of that easement had become appurtenant to Otis's land and run with that land through its division and partial incorporation into the property that is now owned by the Scotts.  Based on this

---

[5]  In light of its conclusion that the Town had acquired a public easement over the Edwardses' way and cul-de-sac by dedication and acceptance, the court did not consider whether the Town or the Scotts also hold prescriptive easements over the way and cul-de-sac, or whether the Scotts hold a deeded easement over the way and cul-de-sac.  Because Titcomb was not a party, the court was careful not to determine the Town's rights, if any, to the part of the cul-de-sac located on Titcomb's property.  *See Laux v. Harrington*, 2012 ME 18, ¶¶ 24-25, 38 A.3d 318 (concluding that although the court mentioned non-parties' properties in discussing the factual issue of an easement's course, the court's formal declaration of the easement's location properly referred only to the parties' properties).

analysis, the court ruled that the Scotts hold record easement rights to use the Edwardses' intertidal beach area "for bathing and boating purposes."[6]

[¶19] The Edwardses timely moved for additional findings and the court denied the motion. The Edwardses then appealed, challenging the court's determinations as to the validity and location of both the public easement claimed by the Town and the beach easement claimed by the Scotts.

## II. DISCUSSION

A. Status of the Way and Cul-de-sac

1. Validity of the Dedication Process

[¶20] We begin our analysis of the status of the way and cul-de-sac by considering the operative legal consequences of the Town's vote to accept a dedicated public easement over "Coopers Beach Road."[7] The Edwardses challenge the court's conclusion that the 1986 petition specifically described the location of the dedicated property as required by 23 M.R.S. § 3025. The Town contends that the Edwardses' challenge to the dedication's statutory sufficiency is time-barred by M.R. Civ. P. 80B. We review the interpretation of statutes and the

---

[6] The court also concluded that the Scotts do not have prescriptive rights to use the Edwardses' beach, but that they do have the right to use the Edwardses' beach to the extent allowed by Maine common law. Neither the Scotts nor the Edwardses challenge these conclusions on appeal.

[7] Pursuant to 23 M.R.S. § 3025 (2014), "Unless specifically provided by the municipality, title to property accepted for highway purposes after December 31, 1976 shall be in fee simple." Here, the minutes for the special meeting held by the Town of Owls Head on August 19, 1986, reflect that the Town specifically voted to accept the dedication of a public easement over Coopers Beach Road, rather than fee simple title to the road.

10

Maine Rules of Civil Procedure de novo as a matter of law. *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 9, 21 A.3d 115; *J.A. Rapaport Family L.P. v. City of Brewer*, 2005 ME 89, ¶ 4, 877 A.2d 1077.

[¶21]   Title 23 M.R.S. § 3025 imposes descriptive requirements[8] on a dedication for "highway purposes," which purposes are defined to include "use as a town way[9] and those things incidental to the . . . maintenance . . . of town ways," 23 M.R.S. § 3021(1) (2014).  A dedication for highway purposes must be formally manifested by a writing or subdivision plot plan that describes the property to be dedicated for public use.  23 M.R.S. § 3025.  When a dedication is manifested in writing, the writing must specifically describe the location and the property interest that is the subject of the dedicatory offer.  *Id.*  Municipal acceptance of a dedication may be accomplished by an affirmative vote on an article in a town meeting warrant.  *Vachon v. Town of Lisbon*, 295 A.2d 255, 260 (Me. 1972).  A person aggrieved by a municipality's acceptance of a

---

[8]  With added emphasis, 23 M.R.S. § 3025 provides in relevant part:

> No property or interests therein may be dedicated for highway purposes unless the owner of such property or interest has filed with the municipal officers a petition . . . or other writing *specifically describing the property or interest and its location*, and stating that the owner voluntarily offers to transfer such interests to the municipality without claim for damages, or has filed in the registry of deeds an approved subdivision plot plan which describes property to be appropriated for public use.

[9]  "Town way" is defined as, among other things, an "area or strip of land designated and held by a municipality for the passage and use of the general public by motor vehicle."  23 M.R.S. § 3021(3) (2014).

dedication may appeal to the Superior Court pursuant to Rule 80B. *See* 23 M.R.S. § 3029. Because section 3029 contains no time limit, an appeal from an acceptance accomplished by vote must be brought within thirty days after the vote. *See* M.R. Civ. P. 80B(b).

[¶22] The record here demonstrates that the Town held a meeting in August 1986, during which residents accepted by vote a public easement over "Coopers Beach Road." Any person aggrieved by the Town's acceptance of the dedication had thirty days from the date of the vote within which to appeal. The deadline for appealing the Town's acceptance thus expired in September 1986.

[¶23] The Edwardses contend that their claims are timely because they seek declaratory relief as to the location of the Town's easement over Coopers Beach Road. However, the Edwardses also plainly challenge the description of the proposed dedication as inconsistent with statutory requirements. "Such challenges are the essence of matters that must be brought pursuant to Rule 80B to question whether the particular action of a municipal[ity] . . . is consistent with the requirements of law." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 13, 868 A.2d 172. Rule 80B is the sole means for seeking Superior Court review of the legality of an act by a municipal body, "whether such review is specifically authorized by statute or is otherwise available by law." *Id.* (quotation marks

omitted). Moreover, "a declaratory judgment action cannot be used to revive a [Rule 80B claim] that is otherwise barred by the passage of time." *Id.* ¶ 10.

[¶24] Because no appeal was taken within the time prescribed by Rule 80B, the validity of the 1986 dedication cannot be challenged now. *See Whalen v. Town of Livermore*, 588 A.2d 319, 321 n.3 (Me. 1991); *Goucher v. Hanson*, 537 A.2d 1142, 1142-43 (Me. 1988); *Town of Fayette v. Manter*, 528 A.2d 887, 889 (Me. 1987). The Town's votes must therefore "be presumed to have the operative consequences apparently intended": to accept an easement over "Coopers Beach Road." *Manter*, 528 A.2d at 889; *see also Goucher*, 537 A.2d at 1143.

2. Location of the Public Easement[10]

[¶25] The Edwardses next challenge the court's conclusion that the Town's easement extends over the way and cul-de-sac located on their property. They argue that the dedication petition plainly demonstrates McLoon's intent to grant an easement over only the part of the road "abutting" his property, and that the court erred by considering evidence of McLoon's intent extrinsic to the petition.

[¶26] To prove a dedication, it must be clearly shown that the grantor intended to dedicate the property at issue for a public purpose. *Town of Kittery v. MacKenzie*, 2001 ME 170, ¶ 10, 785 A.2d 1251. The construction of a petition to

---

[10]  Though the Edwardses are time-barred from challenging the validity of the dedicatory description on statutory grounds, Rule 80B does not bar the Edwardses' argument that that description was not intended to include the way and cul-de-sac.

dedicate an easement is ordinarily a matter of law. *See Testa's, Inc.*, 2014 ME 137, ¶ 11, 105 A.3d 1037. However, if the petition is ambiguous, its construction is a question of fact. *See id.* If the language of the petition is susceptible to more than one interpretation, it "must be read in the light of the circumstances surrounding its execution to effectuate its main end." *Callahan v. Ganneston Park Dev. Corp.*, 245 A.2d 274, 276 (Me. 1968) (quotation marks omitted). In such cases, "[t]he meaning to be discovered and applied is that which each party had reason to know would be given to the words by the other party." *Id.* at 277 (quotation marks omitted). We will uphold the court's determination regarding the parties' intent unless it is clearly erroneous. *Anchors v. Manter*, 1998 ME 152, ¶ 16, 714 A.2d 134.

[¶27] Here, the second page of the petition states, "We the undersigned, abutting property owners on Coopers Beach Road, are in agreement with having the Town of Owl's Head accept the road as a public easement, without claim for damages." McLoon's signature under this language clearly demonstrates that he intended to grant the Town an easement over "Coopers Beach Road." However, this language does not indicate the parties' understanding as to the road's location on the face of the earth. The significance that the parties would have attached to the term "abutter" and their understanding as to whether the road included the way and cul-de-sac cannot be determined by reading the petition in the abstract.

14

Contrary to the Edwardses' contention, the petition is ambiguous and the court did not err in considering extrinsic evidence.

[¶28]  Competent evidence supports the court's findings that (1) the Town had historically snowplowed and sanded Coopers Beach Road up to and including the way and cul-de-sac; (2) the petition was circulated after the Town announced its intent to cease maintaining private roads; and (3) McLoon was aware of the Town's announcement and understood that by signing the petition he could secure the continued provision of Town plowing, but would give up the right to exclude others.  The record also supports the court's finding that, at the time of the dedication, the Town used the disputed way in the same manner that it used the entire road network that was formerly collectively called Coopers Beach Road.

[¶29]  That the road was dedicated to secure continued snowplowing by the Town and that the way and cul-de-sac had historically benefited from those services suggests that the way and cul-de-sac were to be included in the dedication. That McLoon signed the petition with awareness of the dedication's purpose and consequences indicates that he intended to give up privacy in the way and cul-de-sac in exchange for the continued benefit of having the Town snowplow those areas.  That the Town used the disputed way in a manner indistinguishable from its use of other parts of the Coopers Beach Road network also supports a

determination that the Town understood that Coopers Beach Road included the disputed way.

[¶30]  In sum, there was ample evidence to support the court's finding that, at the time of the dedication, McLoon and the Town both understood "Coopers Beach Road" to include the way and cul-de-sac.[11]  Though the record also contains conflicting evidence, the court did not clearly err in finding that McLoon intended to grant the Town an easement over the way and cul-de-sac, and that the northern terminus of the public easement over "Coopers Beach Road" therefore includes the way and cul-de-sac located on the Edwardses' property.  *See D'Angelo v. McNutt*, 2005 ME 31, ¶ 6, 868 A.2d 239 ("[T]he trial court's . . . findings of fact [are] reviewed for clear error and will be affirmed if there is competent evidence in the record to support the finding[s] even if the evidence might support alternative findings of fact." (alteration omitted) (quotation marks omitted)).

[¶31]  Because the statutory validity of the dedicatory description is no longer open to challenge, the only issue is the location of the dedicated property. Discerning no error in the court's interpretation of the dedication petition, we

---

[11]  This conclusion as to the Town's understanding of the location of Coopers Beach Road is further supported by the tax map made available at the 1996 meeting, which is displayed *supra* ¶ 13.  The record supports the court's finding that that tax map had been marked by a selectman "to depict the location of the Cooper's Beach Road dedication based on his understanding of the 1986 acceptance."  The map depicts a hand-drawn line running the length of Coopers Beach Road and extending over the way and cul-de-sac located on the Edwardses' property.

16

affirm the conclusion that the 1986 dedication created a public easement that extends over the way and cul-de-sac located on the Edwardses' land.[12]

B.      Status of the Edwardses' Beach

[¶32]   The Edwardses contest the court's determination that Cora Perry intended to grant Ensign Otis an easement over the beach located on their property. They challenge the court's conclusion that the beach easement passed through subsequent transfers of Otis's estate as an appurtenance. They also contend that the beach easement, even if it were appurtenant and even if it included their beach, is not enforceable against them because they acquired their property without notice of the encumbrance. Because the Edwardses failed to present their contentions regarding lack of notice to the trial court, we do not consider this issue on appeal.[13]

1.      Construction of Perry's 1924 Deed to Otis

[¶33]   We begin our analysis of the status of the Edwardses' beach by addressing the operative legal consequences of Perry's 1924 deed to Otis. We review the construction of deeds "de novo as a question of law." *Tarason v.*

---

[12]   In light of our conclusion that the Town acquired a public easement over the way and cul-de-sac by dedication and acceptance, we do not address the Town's alternative claim that it acquired a public easement over the way and cul-de-sac by prescription.

[13]   Both before and after trial, the Edwardses argued that the Scotts' predecessors-in-title had not transferred any beach rights to the Scotts, and that even if the Scotts had acquired such rights, the beach area subject to that encumbrance was not located on the Edwardses' property. The first time that the Edwardses raised lack of notice as a discrete issue regarding the beach easement's viability was on appeal in their reply brief. We will not review this case on a theory different from that on which it was tried in the trial court. *See Teel v. Colson*, 396 A.2d 529, 534 (Me. 1979).

*Wesson Realty, LLC*, 2012 ME 47, ¶ 18, 40 A.3d 1005.  In construing deeds, we strive to "determine the intentions of the parties to the deed as expressed in the instrument." *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 551 (Me. 1973).

[¶34]  A deed may create an easement "by grant, express or implied, where the grantor benefits the conveyed land with an easement over land retained by the grantor." *O'Connell v. Larkin*, 532 A.2d 1039, 1042 (Me. 1987).  An easement is created by express grant in a deed when the deed's explicit language evidences the grantor's intent to create an easement for the benefit of the grantee.  *See Reed*, 311 A.2d at 551.  When a deed conveys lots by reference to a plan depicting features designed to increase the lots' value, the law may imply an easement in those features in order to secure to the grantee "those benefits, the promise of which, it is reasonable to infer, has induced [him] to buy portions of a tract laid out on the plan indicated." *Arnold v. Boulay*, 147 Me. 116, 121, 83 A.2d 574, 577 (1951) (quotation marks omitted).

[¶35]  Perry's deed to Otis conveyed three lots, described as (1) "lot No. 12 on plan of [Coopers] Beach made by A.D. Blackinton," (2) "lot No. 13 on the [same] plan," and (3) "the triangular strip shown on the [same] plan."  After describing the property conveyed, the deed also granted the "privileges of all streets laid out on said plan and the free use of the beach for bathing and boating purposes."  Though the 1924 deed conveyed property by reference to a plan

depicting an intertidal area, the deed did not give rise to a beach easement by implication. By explicitly granting Otis beach rights, Perry created an express easement appurtenant to the lots that she conveyed to Otis. *See ALC Dev. Corp. v. Walker*, 2002 ME 11, ¶ 14, 787 A.2d 770 ("Whenever possible an easement should be fairly construed to be appurtenant to the land of the person for whose use the easement is created.").

2.     Succession of the Beach Easement as an Appurtenance

[¶36]  The Edwardses challenge the court's conclusion that Otis's beach easement passed through subsequent transfers of Otis's estate as an appurtenance thereof, survived the division of that estate, and today benefits the Scotts' property.

[¶37]  An appurtenant easement is created to benefit a dominant estate and generally passes with that estate, *id.*, regardless of whether the easement is expressly mentioned in later conveyances of the dominant estate, *Cole v. Bradbury*, 86 Me. 380, 384, 29 A. 1097, 1098 (1894), and regardless of whether later conveyances divide the dominant estate, Restatement (Third) of Property: Servitudes § 5.7 (Am. Law Inst. 2000); *see also Cleaves v. Braman*, 103 Me. 154, 161, 68 A. 857, 860 (1907). However, an appurtenant easement can be terminated by an act of the dominant owner demonstrating a clear intention to extinguish the easement. *Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 94 (Me. 1996). Except as limited by the terms of an easement's creation or transfer,

the dominant owner can apportion appurtenant benefits to some parts of the estate and extinguish those benefits as to other parts. Restatement (First) of Property § 488 cmt. a (Am. Law Inst. 1944). The effectiveness of an extinguishment depends upon a finding of the dominant owner's intent. *Great Cove Boat Club*, 672 A.2d at 94.

[¶38] The Edwardses contend that the Scotts' grantors intended to apportion their beach rights to the property that they retained, and to extinguish those rights as to the property that they conveyed to the Scotts. They argue that this intent is demonstrated by the Scotts' deed. That deed (1) conveys a portion of Otis's estate and land that was not included in Otis's estate, (2) grants an express easement of access, and (3) is silent as to the beach. We are unpersuaded. Neither the express access easement nor the division of Otis's estate manifests a clear intention to extinguish the beach easement. Though the admixture of a part of Otis's estate and property not included in Otis's estate might suggest an intention to extinguish appurtenances of Otis's estate, the court did not err in determining, in the absence of other indicia of intent, that the Scotts' grantors did not extinguish the easement. *Cf. id.* at 95 (concluding that an instrument evidenced an intent to extinguish an easement when the instrument's terms were inconsistent with the easement's continued existence).

### 3. Location of the Beach Easement

[¶39]  The Edwardses finally contend that the court erred in its location of the beach easement and in its determination that that easement burdens their property.  Specifically, the Edwardses argue that Otis's deed is ambiguous as to the precise location of "the beach," and that the court erred by disregarding extrinsic evidence that Perry intended to burden only the beach in front of lot 24 as depicted on the Blackinton Plan.

[¶40]  Here, the 1924 deed conveys the "privileges of all streets laid out on [the Blackinton Plan] and the free use of the beach for bathing and boating purposes."  The deed expressly refers to the plan for the purpose of locating an easement over particular streets and, in the same sentence, grants use of "the beach."  This language indicates that Perry intended to designate the location of the beach by reference to the Blackinton Plan, which depicts an intertidal area without labels or limitations.  The record establishes that the Edwardses' beach was included in the intertidal area shown on the plan, and that Perry owned the Edwardses' beach at the time of her 1924 conveyance to Otis.

[¶41]  Considering the plain meaning of the deed's language and the plan's illustration, we conclude that those documents are not ambiguous as to the location of "the beach."  When construed in conjunction with the plan's unrestricted depiction of an intertidal area, the deed's reference to "the beach" has a plain and

obvious meaning: to grant rights to the intertidal area depicted on the plan. In view of these consistent and clear indications as to the location of "the beach," the court did not err in disregarding extrinsic evidence of Perry's intent, or in concluding that "the beach" easement includes the Edwardses' intertidal area.

[¶42] The court correctly determined that the beach easement passed with the portion of Otis's estate that is now included in the Scotts' property, and correctly construed Otis's deed to grant rights over the intertidal area located on the Edwardses' property. We therefore uphold the court's conclusion that the Scotts have a right to use the Edwardses' beach for "bathing and boating purposes."

The entry is:

Judgment affirmed.

**On the briefs:**

David A. Soley, Esq., and Glenn Israel, Esq., Bernstein Shur, Portland, for appellants Darlene F. Edwards and Lewis M. Edwards III

William H. Dale, Esq., and Mark A. Bower, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Town of Owls Head

Judy A.S. Metcalf, Esq., and Ryan P. Dumais, Esq., Eaton Peabody, Brunswick, for appellees Cynthia S. Blackman, Nathalie M. Scott, Willis A. Scott Jr., Eliot A. Scott, and Constance M. Scott

22

**At oral argument:**

David A. Soley, Esq., for appellants Darlene F. Edwards and Lewis M. Edwards III

William H. Dale, Esq., for appellee Town of Owls Head

Judy A.S. Metcalf, Esq., for appellees Cynthia S. Blackman, Nathalie M. Scott, Willis A. Scott Jr., Eliot A. Scott, and Constance M. Scott

Knox County Superior Court docket number RE-2011-47
FOR CLERK REFERENCE ONLY