MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2026 ME 36
Docket:      Yor-25-347
Argued:      February 5, 2026
Decided:     April 21, 2026

Panel:       MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ., and HJELM, A.R.J.

RICHARD LYTLE et al.

v.

DOUGLAS E. LIND et al.

MEAD, J.

[¶1]  Richard Lytle, Sandra Lytle, and Gregg Wilson (collectively, the neighbors) appeal from an order of the Superior Court (York County, *Mulhern, J.*) granting a partial summary judgment in favor of Douglas E. Lind and Louise B. Lind on the parties' respective cross-motions for summary judgment relating to certain claims of unreasonable interference with an easement.  The parties later stipulated to the dismissal of allegations of other forms of interference with the easement, resulting in a final judgment.  The neighbors argue that the court erred in concluding that a split-rail fence erected by the Linds within an easement held by the neighbors did not unreasonably interfere with the right-of-way as a matter of law.  We agree and remand for further proceedings.

## I. FACTUAL BACKGROUND

[¶2]  The following facts are presented in the light most favorable to the neighbors as the nonprevailing party and are supported in the summary judgment record.  *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 2, 45 A.3d 722.

[¶3]  The Linds live on and hold title to property in Wells.  The Lind property is identified as Lot 327 on a 1938 subdivision plan titled "Plan of the Wells Beach Improvement Company."  Parties in interest, Eric D. Blomgren and Kristen D. Blomgren, own an abutting parcel, Lot 328, in the subdivision.

[¶4]  The subdivision plan depicts a ten-foot-wide right-of-way that is located over the Lind and Blomgren parcels, running along the parcels' common boundary, with five feet of the easement's width located on each of the two parcels.[1]  The right-of-way leads to a cement bulkhead and stairway that allows access to the Webhannet River.

[¶5]  In 1987, Richard Lytle and Sandra Lytle purchased Lot 303 in the subdivision.  The Lytles' deed does not contain an express easement granting them rights to the right-of-way depicted in the plan.  Wilson is a joint owner of Lot 302 in the subdivision.  Wilson's deed states that the "premises are

---

[1]  The right-of-way is also depicted in a survey of Lot 327 that Douglas Lind's parents and sister commissioned in 2005.

conveyed together with a right-of-way over the several ways and avenues shown on said plan." The parties agree that the purpose of the easement is explicitly described in the deed as pedestrian access to the Webhannet River.

[¶6] Even though the Lytles' deed does not contain an express easement granting them rights to the right-of-way depicted in the plan, the court determined that the Lytles' parcel benefits from an implied easement identical to the one described in Wilson's deed. *See Edwards v. Blackman,* 2015 ME 165, ¶ 34, 129 A.3d 971. The court also determined that the Lytles possess an easement under the "paper streets" statutes. *See* 23 M.R.S. §§ 3027, 3031 (2025); 33 M.R.S. § 460 (2025). The Linds do not contest the determination that their parcel is burdened by the easement held by the neighbors.

[¶7] The Linds have observed the Lytles use the right-of-way from time to time to access the Webhannet shoreline since the Lytles purchased their lot in 1987. The neighbors use the right-of-way to carry a variety of water-related items, including paddleboards and kayaks, to the river.

[¶8] On May 22, 2023, the Linds installed a split-rail fence within the right-of-way just inside the property line they share with the Blomgrens. The fence runs parallel to the common boundary, along the center of the right-of-way, and ends near the river. The section of the fence closest to the

4

river was angled near the stairs that lead to the riverbed. The Linds also constructed a driveway that is partly within the right-of-way. In correspondence between counsel for the Linds and the neighbors in July 2023, the Linds asserted that the fence did not interfere with access to the river but agreed to remove the lower angled section of fence from their property to allow greater access to the stairs leading to the water.

## II. PROCEDURAL HISTORY

[¶9] On October 4, 2023, the neighbors filed a complaint against the Linds seeking, in part, a declaratory judgment that the fence and vehicles parked in the Linds' driveway unreasonably interfered with their easement rights. The neighbors also sought injunctive relief and requested a preliminary injunction that would have required the Linds to remove the fence. Following a hearing, the court denied the neighbors' request for a preliminary injunction. On October 31, 2023, the Linds filed a motion to dismiss the complaint for failure to join the Blomgrens as a necessary party. The court issued an order requiring the neighbors to file an amended complaint naming the Blomgrens as a party in interest, and the neighbors then filed an amended complaint joining the Blomgrens.

[¶10]  On April 30, 2024, the neighbors moved for summary judgment. The Linds submitted an opposition to the motion and filed a cross-motion for summary judgment.  On November 12, 2024, the court denied the neighbors' motion for summary judgment and granted the Linds' cross-motion in part, concluding that the fence did not unreasonably or materially interfere with the neighbors' use of the right-of-way.  The court did conclude, however, that the Linds' parking vehicles in the right-of-way materially impairs pedestrian access over the right-of-way and constitutes an interference with the rights of the easement users.  Neither party contests this latter determination on appeal.

[¶11]  The Linds and the neighbors each filed a motion to alter or amend the order, *see* M.R. Civ. P. 59(e), which were denied.  On July 15, 2025, the court entered final judgment following the parties' stipulation to a dismissal regarding the grade or elevation of the Linds' driveway.[2]  The neighbors timely appealed.  *See* M.R. App. P. 2B(c)(2)(D).

### III.  DISCUSSION

[¶12]  On appeal, the neighbors argue that the court erred in denying their motion for summary judgment and granting the Linds' motion for

---

[2]  The court had denied summary judgment as to the neighbors' claim that the Linds' uneven driveway unreasonably obstructs the right-of-way because a genuine issue of material fact remained regarding the elevation of the driveway.

6

summary judgment in part because the split-rail fence divides the right-of-way into two parallel portions and obstructs the path, unreasonably interfering with the right-of-way as a matter of law. The neighbors also assert that the fence encumbers their ability to use the right-of-way because they often carry water-sports equipment such as canoes or kayaks to the river. The Linds argue that their fence does not materially impair the neighbors' right of pedestrian access over the right-of-way and, as a result, does not constitute an interference with the neighbors' easement rights.

[¶13] "We review de novo the grant or denial of cross-motions for summary judgment, and consider both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact. Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Osprey Landing, LLC v. First Am. Title Ins. Co.*, 2017 ME 46, ¶ 7, 157 A.3d 247 (citation and quotation marks omitted).

[¶14] "Property, although subject to an easement, remains within the ownership and control of the owner of the servient estate. That ownership and control is subject only to the restriction that the owner of the servient estate

not materially impair or unreasonably interfere with the use of the right-of-way that is allowed by the easement." *Flaherty v. Muther*, 2013 ME 39, ¶ 21, 65 A.3d 1209 (quotation marks omitted).

[¶15]  To support the conclusion that the fence does not unreasonably interfere with the right-of-way, the trial court relied on the absence of any dispute among the parties that users of the easement are able to gain access to the river even with the installation of the fence.  This analysis, however, is in error because, since 1898, we have routinely held that owners of easements have the full right to use the entire width of a right-of-way and "are not limited in such right to what is necessary or convenient."  *Rotch v. Livingston*, 91 Me. 461, 472-73, 40 A. 426, 431 (1898); *see Stanton v. Strong*, 2012 ME 48, ¶ 10, 40 A.3d 1013.

[¶16]  In 2024, we reaffirmed our commitment to easement holders' rights in *Kinderhaus N. LLC v. Nicolas*, 2024 ME 34, ¶¶ 31-34, 314 A.3d 300. There, the dispute centered on the presence of trees located within a twenty-foot-wide right-of-way.  *Id.* ¶¶ 5-6.  We noted that the trees were an obstacle that would force the dominant estate holders to "zig-zag or otherwise use only a portion of the twenty-foot right of way to avoid the trees."  *Id.* ¶ 34. As a result, we concluded that the dominant estate holder was within her rights

to remove the trees because they were permanent obstructions located within the easement. *Id.* We based this conclusion on our precedent holding that "where the grant of an easement is clearly for the purpose of allowing free and convenient passage over a lot from every feasible point necessary for enjoyment of the easement, restriction of access to a particular point is impermissible." *Id.* ¶¶ 33-34 (quoting *Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 6, 910 A.2d 392).

[¶17] Similar to the interference created by the trees in *Kinderhaus*, the Linds' fence forces the dominant estate holders to use only a portion of the right-of-way or otherwise vary their path because they cannot walk through the center of the easement or traverse from one side of the easement to the other. The fence also restricts the width of objects that the easement otherwise would accommodate. "It may be argued that this is a trifling inconvenience, but as owners of the dominant estate, they have the unrestricted right to 'use the full extent of the described land for purposes consistent with the deeded easement.'" *Id.* ¶ 34 (quoting *Mill Pond*, 2006 ME 135, ¶ 7, 910 A.2d 392).

[¶18] "The right to unfettered use of the full area of the easement is not, however, a blanket prohibition on any objects being placed within the space of the easement." *Id.* ¶ 34 n.8. In *Mill Pond*, for example, we sanctioned the

presence of a sign placed within an easement because it did not interfere with dominant estate owners' ingress or egress across the easement. 2006 ME 135, ¶ 7, 910 A.2d 392. In that case, we reiterated that "where the metes and bounds of an easement are explicitly described in the deed, the easement holder has the right to use the full extent of the described land for *purposes consistent with the deeded easement.*" *Id.* (emphasis added).

[¶19] *Mill Pond* is distinguishable from this case because the sign in that case was placed on the southeast corner of the easement in a remote and unusable location—an area that could not "be reasonably used for purposes of ingress and egress." *Id.* ¶¶ 3-4. Here, in contrast, the fence was placed squarely down the middle of the right-of-way, an area that undoubtably can and should be used for purposes of ingress and egress. Unlike the sign in *Mill Pond*, the Linds' fence interferes with the use of the right-of-way because it splits the easement in half, transforming the ten-foot-wide right-of-way into two five-foot-wide rights-of-way, making the easement more difficult to traverse. *See id.* ¶ 7. The fence itself also consumes space that is part of the easement.

[¶20] Our sanctioning of the placement of the sign in *Mill Pond* does not undermine our existing jurisprudence that servient estate holders may not erect permanent structures within specified travel portions of an easement. *See*

*id.* The purpose of the easement in the present case is to allow pedestrians access to the river, including when they carry water-related equipment. The Linds' fence directly and unreasonably burdens the easement because it splits the easement in half and prevents pedestrians from having full use of the easement. As a result, we vacate the summary judgment and remand for entry of summary judgment in favor of the neighbors on this issue.

The entry is:

> Summary judgment vacated. Remanded for further proceedings, including adjudication of the neighbors' claim for injunctive relief, consistent with this opinion.

---

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Richard Lytle, Sandra Lytle, and Gregg Wilson

Gordon R. Smith, Esq. (orally), Verrill Dana, LLP, Portland, for appellees Douglas Lind and Louise Lind

York County Superior Court docket number CV-2023-185
FOR CLERK REFERENCE ONLY