Charles R. GINN and Lois Ginn

v.

PENOBSCOT COMPANY.

Supreme Judicial Court of Maine.

July 25, 1975.

Gross, Minsky, Mogul & Singal, by Jules L. Mogul, George Z. Singal, Bangor, for plaintiffs.

Rudman, Rudman & Carter, by John M. Wallach, Gene Carter, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

Upon the complaint for damages on account of personal injuries suffered by

Charles R. Ginn (husband) and for consequential damages flowing therefrom filed in the Superior Court (Penobscot County) on March 3, 1972, the jury, on December 4, 1974, returned a verdict for the plaintiffs and assessed damages in the amount of $458,611.01. The corporate defendant (Penobscot Company) appealed to this Court from the ensuing judgment for said amount and costs.

In an opinion dated March 5, 1975 this Court upheld the jury verdict on the issue of liability, but, because of a trial error in the admission of evidence which tainted the amount of the award, we conditioned the denial of the appeal on the issue of damages upon the plaintiffs' remission of all of the judgment in excess of $383,611.-01 within 30 days after the rescript in the case was received. See *Ginn v. Penobscot Company*, 1975, Me., 334 A.2d 874. The reference rescript was silent respecting interest and costs.

On March 6, 1975 the plaintiffs filed with the Clerk of the Superior Court their acceptance of the remittitur. The docket entries indicate that the Clerk forthwith entered judgment for the plaintiffs in the amount of $383,611.01, taxed costs in the Superior Court in the amount of $122.81, and computed interest allowable by law together with Law Court costs in the aggregate amount of $108,740.50. Execution issued against the defendant under date of March 11, 1975 in the total amount of $492,474.32.

The execution included, 1) the amount of the judgment, 2) interest on the judgment from the date of the filing of the complaint (March 3, 1972) to the date of the entry of the judgment on the jury verdict (December 4, 1972) at the rate of six (6%) percent per year, 3) interest on the combined amount of the judgment plus accrued interest from the date of the entry of the judgment on the jury verdict (December 4, 1972) to the date of the execution (March 11, 1975) at the rate of ten (10%) percent per year, 4) taxable costs in

the Superior Court in the amount of $122.-81 and 5) costs in the Law Court in the amount of $622.16.

At the same time they filed their acceptance of the remittitur on March 6, 1975, the plaintiffs requested the Clerk of the Law Court to certify to the Superior Court (Penobscot County) their costs on appeal. In response thereto the Clerk of this Court on March 7, 1975 certified the following costs to the Clerk of the Superior Court purportedly under Rule 76, M.R.C.P.:

| "Preparation of Record on Appeal | $405.50 |
|---|---|
| Preparation of Briefs for Plaintiffs | 210.00 |
| Travel and Attendance | 4.16 |
| Attorney's Fee | 2.50 |
| Total | $622.16" |

As stated previously, these Law Court costs were made part of the execution.

Because this Court's mandate gave no direction as to interest and costs, a dispute respecting both interest and costs arose between the parties. The defendant, on March 28, 1975, filed with this Court a motion for the recall of the certificate of costs on the ground that the Clerk of the Law Court had no authority to issue the certificate under Rule 76(a). The plaintiffs, on the other hand, filed with this Court on April 7, 1975 a motion entitled: "Motion pursuant to rule 75B to have the Law Court amend and clarify its mandate." It gave the history of the litigation to date, asserted that "at no time during the pendency of the above-entitled action did Plaintiffs request a continuance as shown by the docket entries in this matter," and sought the following instruction concerning interest:

"a) Should interest at 6% from the date of the entry of the complaint, to wit, March 3, 1972, to the date Judgment was entered in the Superior Court be added to the amount due from Defendant?

"b) If said interest at 6% is to be added, is said pre-judgment interest to be added to the judgment figure as a basis for computing the 10% post-judgment interest?

"c) Is the 10% post-judgment interest to be computed from December 4, 1972, the date judgment was entered in the Superior Court?"

We note that both motions were filed in this Court after judgment had been entered in the trial court and execution issued thereon, all subsequent to the transmittal of our mandate to the trial court. These motions may be effectively viewed as motions for rehearing for the purpose of recalling and amending our mandate to include specific instructions respecting interest and costs.

It is incumbent on the appellate court in the first instance to determine its own jurisdiction over the subject matter, whether the issue of jurisdiction is raised by the parties or not, and, when lack of jurisdiction to consider and decide the cause appears, it becomes the duty of the appellate court to dismiss the same of its own motion. *Sears, Roebuck & Co. v. City of Portland,* 1949, 144 Me. 250, 68 A.2d 12; *Higgins v. Robbins,* 1970, Me., 265 A.2d 90, 91; *Pendleton v. Sard,* 1972, Me., 297 A.2d 889, 896.

Absent a statutory or rule provision to the contrary, the general rule is that, after an appellate court has determined the issues involved in the case submitted to it and caused its judgment in conformity with such determination to be entered and the case, together with the rescript of decision, to be remanded to the lower court, the appellate court thereafter has no power to reconsider, alter, or modify its decision. An appellate court, generally speaking, is without power to recall a mandate regularly issued for the purpose of correcting judicial error. See, 5B C.J. S. Appeal and Error § 1996; 5 Am.Jur.2d § 1008.

Some courts have viewed the propriety of recalling a mandate once it has issued, not as a strict jurisdictional matter, but rather, as a policy consideration in exercising extraordinary jurisdictional relief. A balancing-of-competing-interests test is applied, whether the interests of justice outweigh the interest in bringing litigation to an end. *Lindus v. Northern Insurance Company of New York,* 1968, 103 Ariz. 160, 438 P.2d 311.

In *Mather v. Cunningham,* 1909, 106 Me. 115, 75 A. 323, where the Law Court mandate was silent upon the question of costs and the prevailing party was seeking the recall of the certificate of decision and mandate for the purpose of hearing the parties thereon and obtaining a decision respecting the same, this Court then stated:

"We know of no statute or rule of law which authorizes the Law Court to recall judgment in this case and reinstate it upon the docket of the Law Court.

\* \* \* \* \* \*

" 'The Law Court in this state is not a constitutional court. It is not a court of original or of common-law jurisdiction. The court is created by statute, and has that jurisdiction only which the statute has conferred upon it, and that is a limited jurisdiction. It has no other authority. The State has the right in creating the Law Court, to limit its power and to determine upon what conditions they shall be exercised. The court cannot properly extend its statutory powers, nor dispense with the conditions imposed.' "

See also *Rose, Admx. v. Osborne, Jr.,* 1938, 135 Me. 467, 199 A. 623.

In *Hann v. Merrill,* 1973, Me., 305 A.2d 545, 551–555, this Court did reconsider on motion its prior opinion after the mandate therein had been sent to the trial court. But the issue of jurisdiction was not raised, nor was it discussed.

In *Nadeau v. State,* 1968, Me., 247 A.2d 113, we did vacate and recall our mandate more than a year following its issuance. Again, the issue of jurisdiction was not raised, nor discussed. But we did say that we would not ordinarily entertain such a motion for reconsideration after the lapse

of so long a period of time and do so now only because of exceptional circumstances. The motivating factor which caused this Court then to act on the motion was the need for providing fast relief to a lifer who was entitled to a new trial or a discharge from custody by reason of the decision of the United States Supreme Court in *Arsenault v. Commonwealth of Massachusetts,* 1968, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, which in effect turned our previous mandate in *Nadeau v. State of Maine,* 1967, Me., 232 A.2d 82, into judicial error.

In *Harris Baking Company v. Mazzeo,* 1972, Me., 294 A.2d 445, 451, this Court has recognized that statutory enabling legislation did empower the Supreme Judicial Court to regulate by rule the procedures applicable in the initiation of an appeal to the Law Court.

"By the enabling provisions of 4 M.R. S.A. § 8 (originally P.L.1957, Chapter 159), conjoined with P.L.1959, Chapter 317, the statute law has assigned to the Maine Rules of Civil Procedure the role to

'. . . govern the procedure in the Supreme Judicial Court when sitting as a Law Court' . . .."

The defendant seeks relief from costs in the Law Court through Rule 75B, M.R.C. P., which reads in pertinent part as follows:

"(a) Procedure on Motions. Unless another form is prescribed by these rules, *an application to the Law Court for an order or other relief* shall be by motion, which shall be in writing, *shall state with particularity the grounds therefor and shall set forth the order or relief sought.*" (Emphasis supplied).

We are aware that the commentary on the Rules states that "Rule 75B cannot be read to create in itself any authority for a motion to the Law Court. It merely prescribes the form and practice for motions for which there is otherwise a basis in the rules or law." Field, McKusick and Wroth, 2 Maine Civil Practice, p. 221, § 75B.1.

In *Isely v. Wilkins,* 1969, Me., 253 A.2d 51, this Court ruled that motions under Rule 75B must be filed only after the Law Court has acquired jurisdiction. Our present concern is, whether the instant Rule 75B motions were filed in this Court after this Court was divested of jurisdiction by the issuance of its mandate to the trial court and action thereon at that level.

■ That the Supreme Judicial Court by a specific rule could specify the particular time at which the Law Court would be divested of its jurisdiction of a case on appeal and the reasons upon which the procedural recall of its mandate might be grounded within the rule making power under the reference enabling legislation would seem unquestionable.

■■ We believe that the general rule espoused in *Mather v. Cunningham, supra,* stands modified by Rule 75B to the extent of permitting the Law Court to protect the integrity of its own processes and allowing it to implement the generally recognized exceptions to the general rule. Indeed, an appellate court does not lose jurisdiction of the case and may recall its mandate for the purpose of correction, where there has been some irregularity or error in its issuance, as where it was issued contrary to the rules of the court, or where, by reason of a clerical mistake, it does not correctly express the judgment of the court (*Kasal v. Kasal,* 1949, 228 Minn. 570, 37 N.W.2d 711); as where the judgment transmitted by the appellate court, because of inadvertent error, mistake, fraud, or lack of jurisdiction, was not in fact the judgment of the court (*Kosten v. Fleming,* 1943, 17 Wash.2d 500, 136 P.2d 449).

## I. COSTS

In the instant case, the Clerk of the Law Court, on request of the plaintiffs, certi-

fied in detail to the Superior Court the amount of costs taxed in the Law Court, purportedly pursuant to Rule 76(d), M.R. C.P. Rule 76(a), however, provides:

> "If an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court. Costs shall be taxed against the unsuccessful party unless the Law Court otherwise directs. *When a judgment is affirmed or reversed in part, or vacated, costs shall be allowed only as ordered by the Law Court.*" (Emphasis added).

This rule is in accordance with the general policy that costs shall be taxed in favor of the "prevailing party." See 14 M. R.S.A. § 1501; M.R.C.P., Rule 54(d).

The Law Court's remand in this case, which denied the defendant's appeal if the plaintiffs remitted all of the judgment in excess of three hundred eighty-three thousand six hundred eleven dollars and one cent (which excess they did remit), was an "affirmance . . . in part" of the Superior Court judgment within the meaning of Rule 76(a).

The rule, under such circumstances, assigns the determination of cost taxation to the discretion of the Law Court. The Law Court rescript, silent as it was on the issue of costs, must be interpreted as holding that no costs were allowed to either party for their expenses in the Law Court. It is true that the Law Court's mandate and the certification of costs were separate instruments directed to the clerk of the trial court. Nevertheless, because the Clerk of the Law Court, without any special express direction by the Law Court, certified to the Clerk of the Superior Court the costs on appeal contrary to Rule 76(a), our mandate was misconstrued.

This was a clerical mistake from which the party prejudiced by the inadvertence of an officer of this Court should not suffer. See *Nystrom v. Templeton,* 1908, 17 N.D. 463, 117 N.W. 473.

## II. INTEREST ON THE JUDGMENT

In order to ascertain our jurisdiction of plaintiffs' motion for clarification, (whether viewed as a motion for rehearing or recall of our mandate), we must determine whether the Law Court's rescript, silent as it was concerning interest, was issued irregularly in contravention of our rules of court.

In Maine, entitlement to interest on judgments is derived from statute. Section 1602 of Title 14, M.R.S.A., as amended, provides:

> "In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days and the losing party at no time requests and obtains a continuance, interest will be assessed from the time of entry of judgment. From and after date of judgment interest shall be allowed at the rate of 10% per year."[1]

Indeed, it is a well established rule that existing statutes affecting judgments and mandates at the time of entry or issuance become a part of them and must be read into such judgments and mandates as if an express provision to that effect were inserted therein. The same would be true respecting rules of court affecting interest on judgments, where such rules are not inconsistent with statute and have the

---

1. The pre-judgment interest contemplated by the statute runs at the "legal rate" of 6% per year. 9 M.R.S.A. § 228.

   It should be noted that the 10% post-judgment portion of the statute became effective during the pendency of litigation in this case. The question of retrospectivity of this provision was resolved in favor of the statute's applicability to this case in *Batchelder v. Tweedie,* 1972, Me., 294 A.2d 443.

force of law. There is *ordinarily* no occasion for mentioning statutory interest in a judgment, since such interest follows as a legal incident from the statute providing for it. *Blair v. Durham,* 1943, 6 Cir., 139 F.2d 260, 261.

We are here concerned with that aspect of the statute which allows interest at a rate of 10% per year from the date of judgment.[2] The critical question is, what is the judgment date for the purpose of the running of interest at the higher rate? This question must be answered within the context of the Civil Rules. Rule 76(e), M.R.C.P., provides:

> "Where a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable as provided by law. When a judgment is modified or reversed with a direction that a judgment for money be entered in the lower court, the rescript shall contain instructions with respect to allowance of interest if the prevailing party's claim to interest has been brought to the attention of the Law Court by brief or oral argument."

■ The plaintiffs argue that the rescript of this Court, which concluded the appeal in this matter, amounted to an affirmance of the judgment of the Superior Court and therefore interest ran from the date of the entry of the judgment of the trial court by operation of law in accordance with 14 M.R.S.A., § 1602. On the other hand, the defendant insists that the remittitur provision contained in this Court's rescript constituted a modification within the meaning of the second sentence of rule 76(e). The defendant notes that the plaintiffs never brought their claim for interest to the attention of the Law Court either in their brief or at oral argument

and that our rescript, in compliance with Rule 76(e), properly contained no instructions regarding interest. Penobscot Company claims that, without instructions from the Law Court, the Superior Court was without authority or power to award interest from a date earlier than that of the decision on appeal. It contends that the 10% rate of interest "should have been computed from March 6, 1975, the date of entry of the Certificate of Decision containing the amended judgment."

Of these two contentions, we hold that the one advocated by the plaintiff is correct. Our holding stems from an examination of the so-called "Briggs rule" from which rule 76(e) of our civil rules and the parallel federal rule take their source.[3]

The "Briggs rule" had its origin in the general principle, "that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R. Co.,* 1948, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, *citing Himely v. Rose,* 5 Cranch 313, 3 L.Ed. 111; *Boyce's Executors v. Grundy,* 9 Pet. 275, 9 L.Ed. 127.

In *Briggs* the plaintiff brought an action under the Federal Employers Liability Act. The jury returned a verdict for the plaintiff in the amount of $42,500. After the verdict was returned, however, the District Court granted a motion to dismiss the action which had previously been reserved for decision and entered judgment for the defendant. On appeal the United States Court of Appeals for the Second Circuit determined that the dismissal was erroneous and ordered that judgment be entered on the verdict returned by the jury. When the District Court entered judgment in accordance with the mandate, it added interest from the date of the ver-

---

2. Pre-judgment interest is available here by operation of the statute. The plaintiff never unilaterally requested or was granted a continuance. The only continuance which appears on the docket was consented to by all parties.

3. F.R.App.P., Rule 37 provides in part:
   "If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest."

dict to the date of the judgment so entered. The defendant brought the case back to the Court of Appeals. There, it was held that the inclusion of interest was error. On certiorari, the Supreme Court of the United States, with four Justices dissenting, stated the following in affirming the action of the Court of Appeals:

"It is clear that the interest was in excess of the terms of the mandate and hence was wrongly included in the District Court's judgment and rightly stricken out by the Circuit Court of Appeals. The latter court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed. If any enlargement of that amount were possible, it could be done only by amendment of the mandate." *Briggs v. Pennsylvania R. Co., supra,* 68 S.Ct. at 1040.

█ We believe that, while the language quoted above appears rather general, the rule announced in *Briggs* is, in reality, a narrow rule of limited application. It applies only when the decision of the appellate court orders, for the first time in the course of litigation, that a money judgment be entered. It is limited to those situations wherein the right to recover is originally determined in the appellate court. It does not apply when an appellate court modifies by additur, remittitur, or otherwise, the amount of an existing judgment for money. Such a holding, we believe, is required by the rationale expressed by the Second Circuit in *Briggs. Briggs v. Pennsylvania R. Co.,* 1947, 2 Cir., 164 F.2d 21.

The Court of Appeals there held:

"It is true that subsequent events have shown that on the date of the original judgment the plaintiff was entitled to have a judgment entered on the verdict and that this judgment would have borne interest until it was paid. But from a practical standpoint it is equally true that the plaintiff then was 'entitled' only to have the trial judge decide the pending motions and direct the entry of such judgment as he fairly determined to be lawful and just. That is exactly what the trial judge did. Thereafter the plaintiff was 'entitled' only to take whatever action by way of appellate review the law afforded her. The delay in the entry of the proper judgment was necessary in the sense that time for appellate review was required; *it was only after the ordinary appellate proceedings had been completed that the plaintiffs' cause of action had reached the point where her right to a judgment on the verdict was judicially established.* That judgment was then promptly entered. The date of its entry became the judgment day from which interest is to be computed under the statute. *It was, under the circumstances, the first day when the judgment could have been entered." Id.* at 23 (Emphasis added).

█ We read our interest statute (14 M.R.S.A. § 1602) to mean that one is entitled to interest as a matter of right at a rate of 10% per year, only when one becomes a judgment creditor. Such a status is not conferred upon a litigant until judgment is entered. In *Briggs,* the plaintiff did not have the benefit of judgment in her favor until judgment had been entered pursuant to the mandate of the Circuit Court of Appeals. She did not become a judgment creditor prior thereto. The critical time for determination of the applicability of the "Briggs rule" and of that portion of M.R.C.P., Rule 76(e) which requires that a claim of interest be brought to the attention of the Law Court by brief or oral argument is the point at which the party litigant is invested with the status of a judgment creditor. In the present case, judgment was entered in the plaintiffs' favor immediately after the jury verdict was returned. Unlike the plaintiff in *Briggs,* the Ginns did not have to rely on the man-

date of an appellate court to establish their entitlement to damages. They became judgment creditors on the date the judgment was entered in the Superior Court pursuant to the verdict of the jury. Theirs was a vested right subject only to divestment upon an adverse ruling of the Law Court on appeal.

The Federal cases, interpreting the "Briggs Rule" and F.R.App.P., Rule 37 are in accord with the view we take of our own rule. In *Fassbinder v. Pennsylvania R. Co.,* 1964, W.D.Pa., 233 F.Supp. 574, *Briggs* was distinguished on the basis that judgment for the plaintiff *was never entered prior to the decision of the appellate court.*

The District Court in *Fassbinder* stated:

"Neither in Briggs nor in its progeny did a situation exist wherein the District Court had entered a judgment which, after being erroneously vacated, was subsequently ordered reinstated by mandate of a Court of Appeals. The fact that entry of a judgment is a prerequisite to the running of interest thereon can scarcely be disputed.

Our determination in no way deviates from or modifies the mandate of the Court of Appeals. The determination of the Court of Appeals that the judgment entered on April 27, 1961, stands is clear. Equally clear is the *Congressional mandate* (§ 1961) that interest be calculated from the date that said judgment was entered." *Id.* at 575.[4]

The District Court in *Fassbinder* held that interest would run from the date of its original judgment. Accord: *Taylor v. Washington Terminal Co.,* 1970, D.D.C., 308 F.Supp. 1152. See also *Perkins v. Standard Oil Co. of California,* 1973, 9 Cir., 487 F.2d 672; *United States v. Michael Schiavone & Sons, Inc.,* 1971, 1 Cir., 450 F.2d 875; *Swartzbaugh Manufacturing Co. v. United States,* 1961, 6 Cir., 289 F.2d 81.

Since our mandate merely modified and did not vacate the action of the Superior Court in entering judgment for the plaintiff, and since our statute, 14 M.R.S.A., § 1602, requires that interest run from the date of the judgment, no instructions relating to the date of the running of post-judgment interest need have been included in our rescript. *Blair v. Durham,* 1943, 6 Cir., 139 F.2d 260. The Law Court's mandate in terms of the remittitur was not a modification of the trial court judgment "with a direction that a judgment for money be entered in the lower court" within the meaning of Rule 76(e), but rather, was an affirmance of a judgment for money (as reduced), in which case Rule 76(e) provides that "whatever interest is allowed by law shall be payable as

---

4. The fact that in *Fassbinder,* supra, a proper judgment was vacated and reinstated and here the judgment of the Superior Court was affirmed conditionally on the acceptance of a remittitur is an immaterial distinction for the purposes of this case. In *Fassbinder,* an erroneously vacated judgment was reinstated, no new judgment was involved. Here, the judgment of the Superior Court was never vacated. A remittitur is not a new judgment. When a judgment of the Superior Court is affirmed subject to the acceptance of a remittitur, upon such acceptance the judgment of the trial court stands as modified. The trial court's judgment is not obliterated. It is *the judgment* for the purpose of the running of the statutory interest. See *Missouri-Kansas-Texas R. Co. v. Edwards,* 1961, Okl., 401 P.2d 303; 5 Am.Jur.2d Appeal and Error, § 947 at p. 374; *Atlantic Coast Line R. Co. v. Watkins,* 1930, 99 Fla. 395, 126 So. 489; and *Litwinowicz v. Weyerhaeuser Steamship Company,* 1960, E.D.Pa., 185 F.Supp. 692, where it was stated:

"[I]nterest would accrue on the judgment as reduced by the remittitur, from the date of the entry of the judgment for the greater amount. This judgment was not vacated, but simply modified by reduction in amount by the plaintiff's remittitur. The position of the parties is precisely the same as though the verdict and judgment had been for this reduced sum." Id. at 693–94.

provided by law." The Rule in this aspect is declaratory of the statutory requirements of 14 M.R.S.A., § 1602, which allows interest as of right at the rate of 10% per year "from and after date of judgment." The Law Court mandate in this case was properly issued without instructions with respect to allowance of interest, since the plaintiffs were entitled as of right to interest without bringing the matter to the attention of the Law Court and without express direction in the rescript at the rate of 10% per year on the amount of the judgment as reduced from the date of the entry of the original judgment for the greater amount.[5]

■ The plaintiffs' motion for clarification was not properly before us, since the Law Court mandate was properly issued. Under the circumstances, this Court must dismiss the plaintiffs' motion for want of jurisdiction. The issues had to be discussed in order to determine jurisdiction and this is fortunate, since they were of novel impression.

■ We note that the defendant has designated as part of the documents to be considered by this Court in opposition to the plaintiffs' motion for clarification its own motion filed in the Superior Court to be relieved from the inclusion as part of the execution on judgment not only of the costs taxed in the Law Court, but also of the interest computed at the rate of 10% per year upon the aggregate amount of the original judgment as reduced and the amount of the pre-judgment interest computed at the rate of 6% per year from the date of the complaint to the date of the original judgment (interest on interest) and also to be relieved from any post-judgment interest except from the time of the Law Court mandate. As the dismissal of the plaintiffs' motion leaves the defendant to its own motion in the Superior Court for relief against the taxation of interest on interest, otherwise known as compound interest, and, since the question has not previously been decided by this Court, is of great importance and would undoubtedly cause another appeal ‹to this Court, we have carefully examined the question and do suggest error in the taxation of costs below, wherein the rate of 10% per year was allowed not only on the amount of the judgment as reduced, but on said amount plus the amount of the pre-judgment interest.

■ As stated in *Batchelder v. Tweedie, supra,* the right to interest under

---

5. Such a direction would be necessary in cases like *Briggs,* where a motion for dismissal is reserved and granted after a jury verdict is returned with the effect of nullifying that verdict. It is also conceivable that such a situation may well arise out of cross motions for summary judgment. The advisory committee notes to F.R.App.P., Rule 37 and M. R.C.P., Rule 76(e) indicate that the provision is applicable when a judgment n. o. v. is reversed on appeal with the direction that judgment be entered in accordance with the jury verdict for money. In such situations, the plaintiff's right to recover is initially recognized, in the form of a judgment, in the appellate court. It is in that context that the party entitled to a judgment for money must bring his claim for interest to the attention of the Law Court. The Law Court may then choose to direct that a judgment for money be entered *nunc pro tunc* to the

date upon which the earlier judgment denying recovery was entered. See *Briggs v. Pennsylvania R. Co.* 1947, 2 Cir., 164 F.2d 21, 23, citing *Ireland v. Connecticut Co.,* 112 Conn. 452, 152 A. 614.

We note that under our rule 76(e), unlike the parallel federal rule, the party who has the benefit of a money judgment entered at the direction of the appellate court in the first instance, has an affirmative duty to raise his claim for interest by brief or at oral argument. Failure to do so will amount to a waiver. The Court will not exercise its power to direct entry of judgment *nunc pro tunc* unless the party claiming the benefit of such an order can affirmatively support his claim. He must convince the Court that the equities of the situation warrant such action. See 2 *R. Field, V. McKusick & L. Wroth,* Maine Civil Practice § 76.2 at p. 234 (2nd Ed. 1970).

14 M.R.S.A., § 1602 is not absolute, but is subject to enlargement or loss due to the parties' conduct of the proceedings. Thus, the legislative intent was not to allow interest "as .a measure of damages," and therefore the matter of pre-judgment interest is not a right of substance given the claimant but rather "a procedural device to control the parties' conduct of the trial." We conclude it was not legislatively intended that interest accruing before judgment in a tort action, and so accruing only if the party's claim is prosecuted diligently, should be an integral part of the judgment itself. Under the circumstances of the instant case, the plaintiffs are not entitled to post-judgment interest at the rate of 10% per year on the amount of the pre-judgment interest. The error may be corrected by the trial court upon the defendant's pending motion before that court, if the parties cannot adjust their differences.

The entry will be

The defendant's motion respecting costs in the Law Court is hereby granted and the certificate of costs issued by the Clerk of this Court in connection with the case of *Ginn v. Penobscot Company,* 1975, Me., 334 A.2d 874, is hereby recalled and vacated.

The plaintiffs' motion for clarification is hereby dismissed.

Costs on their respective motions shall be borne by the respective parties.

This Court's mandate issued in *Ginn v. Penobscot Company, supra,* is hereby modified, for purposes of formality only, solely to the extent as follows:

No costs on appeal are allowed to either party.

All Justices concurring.