MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 101
Docket:      Cum-19-428
Argued:      June 24, 2020
Decided:     August 4, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

TUCKER J. CIANCHETTE et al.

v.

PEGGY A. CIANCHETTE et al.

MEAD, J.

[¶1]  On March 15, 2018, the Superior Court (Cumberland County, *Warren, J.*) entered a final judgment in favor of Tucker J. Cianchette and CBF Associates, LLC (collectively, Tucker), and against Peggy A. Cianchette, Eric L. Cianchette, PET, LLC, and Cianchette Family, LLC (collectively, Peggy and Eric), on Tucker's claims against Peggy and Eric and on Peggy and Eric's counterclaim against Tucker.  Peggy and Eric now appeal from a September 24, 2019, order of the court clarifying that post-judgment interest began to run on March 15, 2018, rather than on June 12, 2018, when the court denied Peggy and Eric's post-judgment motions.  Tucker cross-appeals, arguing that post-judgment interest began to run earlier, on March 5, 2018, when the court entered judgment on Tucker's claims but left Peggy and Eric's

2

counterclaim for judicial dissociation to be resolved later. We affirm the judgment.

## I. BACKGROUND

[¶2] The initial action in this case involved intrafamilial disputes surrounding plans to acquire a Ford vehicle dealership in Yarmouth. The full facts underlying the initial appeal are chronicled in *Cianchette v. Cianchette*, 2019 ME 87, ¶¶ 2-16, 209 A.3d 745, *cert. denied*, 140 S. Ct. 469 (2019). In that appeal, we affirmed the trial court's judgment denying Peggy and Eric's motions for judgment as a matter of law and a new trial. *Id.* ¶¶ 1, 27, 32, 38. On this second appeal to us, the parties seek resolution of two discrete legal issues regarding post-judgment interest, namely (1) whether the trial court had jurisdiction to issue its September 24, 2019, order on post-judgment interest and (2) on what date prejudgment interest ceased and post-judgment interest began to accrue.

[¶3] The procedural record pertinent to the present appeal is as follows. On March 5, 2018, following a jury verdict, the court entered judgment in Tucker's favor on all of his claims and awarded him damages.[1] *Id.* ¶¶ 1, 18.

---

[1] The trial court determined that Tucker could not recover for "both fraudulent misrepresentation and breach of the membership agreement, nor for both breach of fiduciary duty and breach of PET's operating agreement, because the respective claims were predicated on similar conduct." *See Cianchette v. Cianchette*, 2019 ME 87, ¶ 18 & n.5, 209 A.3d 745, *cert. denied*, 140 S. Ct. 469 (2019).

On March 15, 2018, the court resolved the remaining issue before it, dismissing Peggy and Eric's counterclaim requesting Tucker's dissociation from PET, LLC. *See* 31 M.R.S. §§ 1582-1583 (2020).

[¶4] Peggy and Eric filed a motion for a new trial, *see* M.R. Civ. P. 59, and a renewed motion for judgment as a matter of law, *see* M.R. Civ. P. 50(b). On June 12, 2018, the court denied both motions in a judgment entered in the docket the following day. Peggy and Eric appealed to us, and we affirmed the judgment in a June 4, 2019, decision. *See Cianchette*, 2019 ME 87, ¶¶ 1, 38, 209 A.3d 745.

[¶5] On July 3, 2019, Peggy and Eric paid Tucker $6,831,966.23, which represented the full amount of the judgment plus interest calculated on the basis that prejudgment interest stopped and post-judgment interest began on June 12, 2018, the date on which the court denied their post-judgment motions. On August 9, 2019, Tucker filed a motion in the trial court entitled "Plaintiffs' Motion for Determination of Post-Judgment Interest," asserting that Peggy and Eric had not satisfied their obligation to pay interest on the judgment because post-judgment interest began on March 5 (the date the court entered judgment on Tucker's claims against Peggy and Eric following the jury verdict) or,

---

Accordingly, in order to prevent double recovery, the court reduced Tucker's awards for fraudulent misrepresentation and breach of operating agreement following the jury's verdict. *Id.*

4

alternatively, March 15 (the date the court entered judgment dismissing Peggy and Eric's counterclaim for dissociation). In an order entered on September 24, 2019, the court concluded that (1) it had jurisdiction to resolve the post-judgment interest dispute and (2) prejudgment interest stopped and post-judgment interest commenced on March 15, 2018.

[¶6] Peggy and Eric timely appealed to us. *See* M.R. App. P. 2B(c). Tucker timely cross-appealed, contending that post-judgment interest began on March 5 rather than March 15. *See* M.R. App. P. 2C(a).

## II. DISCUSSION

### A. Trial Court Jurisdiction

[¶7] The parties dispute whether the trial court had jurisdiction to issue its September 24, 2019, order regarding post-judgment interest. Peggy and Eric contend that the court lost jurisdiction over the case once it entered a final judgment in 2018. They assert that the proper procedural mechanism for Tucker's contentions is a new suit to enforce the judgment.[2] Tucker contends

---

[2] Peggy and Eric do not contend that Tucker is altogether barred from raising the legal question about post-judgment interest. As the trial court observed in its September 24, 2019, order, Tucker could have requested a writ of execution, *see* M.R. Civ. P. 69, or a separate action to recover additional post-judgment interest he claims has accrued. However, we agree with the trial court that requiring him to do so would simply have postponed the present dispute.

that the trial court maintained inherent, continuing authority to clarify the judgment because the judgment was ambiguous.

[¶8] We review the matter of a trial court's jurisdiction de novo as a matter of law. *See Copp v. Liberty*, 2003 ME 43, ¶ 7, 818 A.2d 1050. As we have repeatedly noted,

> [t]here is no question that the [trial] court has inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous. The [trial] court is always empowered to make clear the meaning of a prior decree where necessary to guide the conduct of the parties.

*Chamberlain v. Harriman*, 2017 ME 127, ¶ 13, 165 A.3d 351 (citations omitted) (quotation marks omitted).

[¶9] In determining whether a prior judgment is ambiguous as a matter of law, our analysis "centers on whether the language at issue is reasonably susceptible to different interpretations." *Id.* ¶ 14 (quotation marks omitted). If the judgment is ambiguous, "we then consider, using an abuse of discretion standard, whether the clarification is consistent with its language read as a whole and is objectively supported by the record." *Id.* (quotation marks omitted); *see Boothbay Harbor Condo. I v. Whitten*, 387 A.2d 1117, 1120-21 (Me. 1978). "Where, as here, the judge who clarified the judgment is also the judge who initially issued the judgment, we give particular deference to the

6

clarification because it is the intention of the court that issued the judgment originally that is controlling." *Voter v. Voter*, 2015 ME 11, ¶ 8, 109 A.3d 626 (quotation marks omitted).

[¶10] Peggy and Eric contend that the language of the trial court's judgments was unambiguous, and that the court therefore lacked the authority to clarify the judgments. They assert that the trial court's June 12, 2018, denial of their post-judgment motions clearly served as the relevant date from which to determine post-judgment interest. The March 5 and March 15, 2018, judgments are ambiguous for purposes of the trial court's retention of jurisdiction because neither specifies the date on which post-judgment interest should begin to run. However, taken together, they demonstrate the court's intent to have March 15 serve as the relevant date for calculating post-judgment interest. The March 5 order stated that it "shall not constitute a final judgment because judgment has not [been] entered on [Peggy and Eric's] equitable counterclaim for [dis]sociation" and provided, "Prejudgment interest shall run from the date the complaint was filed to the entry of final judgment at 3.65%. Post-judgment interest shall run from the entry of final judgment at 7.76%." The March 15 order stated, "This represents final judgment on all the claims in this case." The trial court's June 12, 2018, order denying Peggy and

Eric's motions for a new trial and for renewed judgment as a matter of law did not comment on post-judgment interest nor include such "final judgment" language.

[¶11]   We conclude upon these facts that the trial court maintained jurisdiction to clarify the relevant judgment date for calculating post-judgment interest.   *See Chamberlain*, 2017 ME 127, ¶ 11 & n.2, 165 A.3d 351 (acknowledging that the trial court had "the authority to clarify its own judgment," but declining to address "the court's determination that post-judgment interest began to accrue in 2009" because a timely appeal of the clarifying judgment had not been made (emphasis omitted)).   In light of Peggy and Eric's decision to pay post-judgment interest as having accrued from June 12, 2018, the court acted within its authority in resolving the ambiguity surrounding the meaning of "final judgment" that arose after that payment. *See Boothbay Harbor Condo. I*, 387 A.2d at 1120-21.   Like in *Boothbay Harbor Condominium I*, "[t]he [trial] court's action in construing its judgment was essential for guidance of . . . the parties in complying with the judgment and for later enforcement if the defendants, once informed of the meaning of the [initial] judgment, should fail to comply." *Id.* at 1120.

8

[¶12]  Finally, having determined that the court had authority to act, we conclude that the court did not abuse its discretion in clarifying its judgments to resolve the parties' uncertainty surrounding post-judgment interest.  *See Chamberlain*,  2017  ME  127,  ¶  18,  165  A.3d  351.    The  court's September 24, 2019, judgment made no substantive changes to its original judgments and served merely as a clarification consistent with its prior decrees. *See MacDonald v. MacDonald*, 582 A.2d 976, 977-78 (Me. 1990); *Boothbay Harbor Condo. I*, 387 A.2d at 1120-21.

B.     Post-Judgment Interest Date

[¶13]  Having concluded that the trial court acted within its authority in clarifying the judgments, the remaining question is when prejudgment interest stopped and post-judgment interest commenced as a matter of law.  The specific issue this case presents—the applicable date from which to calculate post-judgment interest where the trial court entered judgment and later denied a post-judgment motion—is one of first impression for us.

1.     March versus June 2018 "Entry of Judgment"

[¶14]   Peggy and Eric contend that our precedents dictate that post-judgment interest began to run in June 2018, when the trial court denied their post-judgment motions.  Thus, because they paid the amount of the

judgment with interest dating from June 2018, they believe they have satisfied the judgment. Tucker contends that post-judgment interest instead began to accrue in March 2018. He argues that the plain language of the post-judgment interest statute does not require that a judgment be final for all purposes; that the cases Peggy and Eric cite do not determine the outcome here; and that the trial court's analysis, which applied persuasive case law from the parallel federal context, was correct.

[¶15] "We review the interpretation of statutes and the Maine Rules of Civil Procedure de novo as a matter of law." *Edwards v. Blackman*, 2015 ME 165, ¶ 20, 129 A.3d 971. Title 14 M.R.S. § 1602-C(1) (2020) provides for post-judgment interest as a matter of right in "all civil and small claims actions." The statute prescribes the process for calculating interest rates, *see id.*, and then provides in relevant part, "Post-judgment interest accrues from and after the date of *entry of judgment* and includes the period of any appeal," 14 M.R.S. § 1602-C(2) (2020) (emphasis added).

[¶16] To support their theory that "entry of judgment" refers to the court's final judgment denying their post-judgment motions, Peggy and Eric rely upon a line of Maine cases, each of which we address in turn and conclude

10

is procedurally distinct from the present matter and does not dictate the outcome here.

[¶17] First, in *Ginn v. Penobscot Co.*, the jury had returned a verdict for the plaintiffs and awarded damages, which we later reduced on appeal. 342 A.2d 270, 273 (Me. 1975). Our mandate on appeal did not address interest on the judgment. *Id.* Following that appeal and the trial court's entry of judgment on remand pursuant to our mandate, both parties filed motions with us regarding interest and costs. *Id.* at 273-74. We concluded that the relevant date from which to calculate post-judgment interest was that of the judgment entered in the Superior Court immediately following the jury verdict, rather than the later date of the mandate following our decision on appeal. *Id.* at 276-79.

[¶18] The bulk of our reasoning concerned the "so-called 'Briggs rule,'" from which the former M.R. Civ. P. 76(e),[3] and the parallel federal rule,

---

[3] As it existed when we decided *Ginn*, M.R. Civ. P. 76(e), which now exists essentially unchanged in M.R. App. P. 13(e), provided,

> Where a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable as provided by law. When a judgment is modified or reversed with a direction that a judgment for money be entered in the lower court, the rescript shall contain instructions with respect to allowance of interest if the prevailing party's claim to interest has been brought to the attention of the Law Court by brief or oral argument.

*Ginn v. Penobscot Co.*, 342 A.2d 270, 277 (Me. 1975).

Fed. R. App. P. 37, were derived. *Ginn*, 342 A.2d at 277; *see Briggs v. Pa. R.R.*, 334 U.S. 304, 306-07 (1948) (holding that where the appellate court reversed the trial court's entry of judgment notwithstanding the verdict and ordered the trial court to enter judgment on the jury verdict, the trial court improperly deviated from the appellate court's mandate when it added a provision for interest on remand). We determined that the Briggs rule, which evolved from the principle that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court," *Ginn,* 342 A.2d at 277 (quoting *Briggs*, 334 U.S. at 306), was a narrow one limited to situations in which "the appellate court orders, for the first time in the course of litigation, that a money judgment be entered," *id.* at 278. We considered the remittitur to be an affirmance rather than a modification for the purposes of the former M.R. Civ. P. 76(e), *see supra* n.3, and concluded that our mandate had been properly issued. *See Ginn*, 342 A.2d at 279-80.

[¶19] We also construed the interest statute in effect at the time[4] "to mean that one is entitled to interest as a matter of right . . . only when one becomes a judgment creditor. Such a status is not conferred upon a litigant

---

[4] At that time, the part of the statute concerning post-judgment interest provided, "From and after date of judgment, interest shall be allowed at the rate of 10% per year." 14 M.R.S.A. § 1602 (Supp. 1975).

until judgment is entered." *Id.* at 278. Contrary to Peggy and Eric's assertions, the "judgment creditor" language in *Ginn* provides no support for their theory that one becomes a judgment creditor only once post-judgment motions have been denied. *Ginn* did not concern post-trial motions. Our holding in that case does not answer the question at hand—whether the trial court's entry of judgment following the verdict or its later denial of post-judgment motions serves as the "entry of judgment" pursuant to the post-judgment interest statute. *See* 14 M.R.S. § 1602-C(2).

[¶20] The following year, in *Rand v. B. G. Pride Realty*, the trial court had entered judgment for the plaintiffs and then on the same day granted the defendants' motion for judgment notwithstanding the verdict pursuant to M.R. Civ. P. 50(b), ordering that judgment for the plaintiffs be set aside and entering judgment for the defendants. 360 A.2d 519, 520-21 (Me. 1976). The plaintiffs appealed, and we remanded to the trial court for reinstatement of judgment for the plaintiffs. *Id.* at 521. Upon remand, the plaintiffs submitted a request to the Clerk of the Law Court that interest be added to the judgment and filed a motion to amend our mandate. *Id.* We addressed the question of whether, for the purposes of calculating post-judgment interest, the "date of judgment," 14 M.R.S.A. § 1602 (Supp. 1975), was the date when the trial court

had initially entered judgment for the plaintiffs before it had *granted* the defendants' motion for judgment notwithstanding the verdict, or the date on which judgment was entered on remand reinstating judgment for the plaintiffs. *Rand*, 360 A.2d at 524-25. We again considered the former M.R. Civ. P. 76(e) and said:

> We noted by way of dicta in *Ginn* that a claim of interest should be brought to the attention of the Law Court on an appeal from a judgment n.o.v. because "the plaintiff's right to recover is initially recognized, in the form of a judgment, in the appellate court." 342 A.2d at 280, n.5. However, the plaintiffs' right to recovery in this case was *in fact recognized* by an entry of judgment prior to the granting of the motion for judgment n.o.v. If we were to treat the entry of judgment in this case as the vesting of the rights of a judgment creditor, then we would be left with the somewhat illogical result that the necessity for calling a claim of interest to the attention of the Law Court and the necessity for giving instructions by this Court depend upon whether judgment is entered before the Justice below orders a judgment n.o.v. *But the language of Rule 50(b), M.R.C.P., makes clear that the entry of judgment after denial of a motion for a directed verdict does not ipso facto give the prevailing party the status of a judgment creditor. The rule provides that a case is given to the jury "subject to a later determination of the legal questions raised by the motion." Although the jury verdict may be the basis of a judgment, it does not become final until the "later determination" is made or until the time expires for the filing of a Rule 50(b) motion. The party in whose favor the jury has found does not gain the status of a judgment creditor until the occurrence of one of those events.*

*Id.* at 524-25 (emphasis added) (footnote omitted). Peggy and Eric rely heavily on this emphasized language from *Rand*, which we analyze further below.

[¶21] In *Townsend v. Chute Chemical Co.*, we addressed a situation that was procedurally indistinguishable from *Rand*. 1997 ME 46, ¶ 12, 691 A.2d 199. In *Townsend*, the jury had returned a verdict in Townsend's favor, and the trial court had then entered judgment *granting* Chute's renewed motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(b), notwithstanding the verdict. *Id.* ¶¶ 1, 5-6. On appeal, we determined that the trial court had erred in granting a judgment as a matter of law in favor of Chute, and we vacated the trial court's judgment and reinstated the judgment in Townsend's favor. *Id.* ¶¶ 1, 9-11. Townsend argued that she was entitled to post-judgment interest from the date of the initial judgment entered following the jury verdict. *Id.* ¶ 12. We disagreed and held that *Rand* dictated the result, summarizing *Rand* as follows: "We have concluded that post-judgment interest will not be allowed from the date of an original judgment when it is later vacated by the trial court on a directed verdict, now a judgment as a matter of law, but subsequently reinstated on appeal." *Id.*

[¶22] Although the language emphasized above in *Rand* purported to state a broad rule delaying the commencement of post-judgment interest where a Rule 50(b) motion is filed or until the time to file such a motion has expired, *Rand* and *Townsend* did not present the procedural posture of the

matter at hand, namely a *denial* of a post-judgment motion. *See Rand*, 360 A.2d at 524-25; *Townsend*, 1997 ME 46, ¶ 12, 691 A.2d 199. Our dictum in *Rand* does not control the outcome here. Instead, the plain language of our post-judgment interest statute and applicable Rules of Civil Procedure, the statute's purpose, and equitable considerations guide us to the narrow holding we announce today: when a trial court enters judgment following a jury verdict in favor of the plaintiff and later denies the defendant's post-judgment motions, the court's earlier entry of judgment—rather than its denial of the post-judgment motions—serves as the date from which to calculate post-judgment interest. In conducting our analysis, we credit the First Circuit's decision in *Marshall v. Perez-Arzuaga*, which presented a nearly identical procedural posture to the present matter and provides an instructive model through its analysis of the parallel federal post-judgment interest statute[5] and procedural rules. *See* 866 F.2d 521, 522 (1st Cir. 1989) ("Our inquiry in this case concerns whether entry of judgment in [28 U.S.C. § 1961(a)] should be construed to mean the initial entry of the district court's judgment on the jury

---

[5] Like Maine's post-judgment interest law, the federal statute guarantees post-judgment interest as of right on civil money judgments. *See* 28 U.S.C.S. § 1961(a) (LEXIS through Pub. L. No. 116-149). Similar to the Maine law, the relevant portion of the federal law provides that post-judgment "interest shall be calculated from the date of the entry of the judgment." *Id.*

verdict or the entry of the court's judgment [following] the [denial of the] defendant's motion for a judgment N.O.V." (quotation marks omitted)).

[¶23] The plain language of section 1602-C is silent on the impact of a post-judgment motion for judgment as a matter of law or a new trial on the timing of the court's "entry of judgment" for purposes of determining the date that post-judgment interest commences. 14 M.R.S. § 1602-C(2); *see* M.R. Civ. P. 50(b), 59(a). The statute simply provides that "[p]ost-judgment interest accrues from and after the date of *entry of judgment* and includes the period of any appeal." 14 M.R.S. § 1602-C(2) (emphasis added). Peggy and Eric ask us to construe the date of "entry of judgment" to mean the final, appealable judgment following which the trial court has nothing left to resolve in the case, which they contend was the court's June 12, 2018, denial of their M.R. Civ. P. 50(b) and 59(a) post-judgment motions. We decline to do so. Our Rules of Appellate Procedure extend the time allotted for filing an appeal in specific situations, including where M.R. Civ. P. 50 and 59 motions have been denied. *See* M.R. App. P. 2B(c)(2). But that subsection in no way determines the interpretation of "entry of judgment" in the post-judgment interest statute. Contrary to Peggy and Eric's theory, we conclude that a plain reading of the word "judgment" in section 1602-C(2) does not require that a judgment be

"final for all purposes." *Marshall*, 866 F.2d at 523; *see In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1177-78 (3d Cir. 1993)*; Ohio-Sealy Mattress Mfr. Co. v. Sealy, Inc.*, 585 F.2d 821, 845 (7th Cir. 1978).

[¶24]  Reading section 1602-C(2) in conjunction with our Rules of Civil Procedure bolsters this understanding.  Maine Rule of Civil Procedure 58, entitled "Entry of Judgment," provides that "[u]nless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury *shall be entered forthwith by the clerk*."  M.R. Civ. P. 58 (emphasis added); *see Marshall*, 866 F.2d at 523-24.  As the court in *Marshall* concluded after assessing the federal post-judgment interest statute and the parallel federal rule, "The import of section 1961, when coupled with Rule 58, is clear: interest runs from the date judgment is entered." *Marshall*, 866 F.2d at 523; *see* 28 U.S.C.S. § 1961(a) (LEXIS through Pub. L. No. 116-149); Fed. R. Civ. P. 58. Here, the court entered judgment in March 2018.

[¶25]  The purpose of the post-judgment interest statute further supports our conclusion.  Peggy and Eric argue that the Maine and federal post-judgment interest statutes rest upon different policy concerns, and thus the federal statute does not offer a relevant analogy.  They base their contention on the fact that unlike Maine law, federal law does not prescribe prejudgment

interest by statute, and thus they argue that under Maine law a plaintiff is "already compensated for the time value of money through pre[j]udgment interest as prescribed in 14 [M.R.S.] § 1602-B [(2020)]."

[¶26]   This argument is unpersuasive for several reasons.   First, post-judgment interest serves a consistent purpose across federal and Maine courts.  As we have declared, the purpose of post-judgment interest is to serve as an "enforcement tool to ensure that, once litigants have successfully invoked the power of the courts, the award of just compensation will not be diminished by delay in payment." *Brown v. Habrle*, 2010 ME 72, ¶ 18, 1 A.3d 401 (quotation marks omitted).  Federal courts have reached a similar conclusion. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) ("The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." (alteration omitted) (quotation marks omitted)); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998).  Prejudgment interest, on the other hand, serves to compensate the plaintiff from the date the suit is filed until judgment is entered and encourages the "pretrial settlement of clearly meritorious suits." *Osgood v. Osgood*, 1997 ME 192, ¶ 10, 698 A.2d 1071.

[¶27] Second, although Peggy and Eric are correct that federal law does not codify prejudgment interest in statute as Maine law does, federal courts sitting in diversity apply the federal post-judgment interest statute and any applicable state *prejudgment* interest statute to a party's state-law claims. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 146 (1st Cir. 2009).[6] That federal cases may not always offer prejudgment interest in addition to post-judgment interest in no way undermines the purpose of post-judgment interest, under both bodies of law, to ensure prompt enforcement of compensation once damages have been ascertained. *See Greenway*, 143 F.3d at 55; *Brown*, 2010 ME 72, ¶ 18, 1 A.3d 401.

[¶28] Finally, two equitable considerations support our interpretation. First, the trial court denied Peggy and Eric's post-judgment motions, and we

---

[6] Peggy and Eric claim that *Tobin v. Liberty Mutual Insurance Co.* supports their position that resolution of a post-judgment motion establishes the dividing line between pre-and post-judgment interest. 553 F.3d 121 (1st Cir. 2009). Not only does *Tobin* not bind us because it interprets federal and Massachusetts law, but we do not find it to be persuasive in Peggy and Eric's favor. The First Circuit in *Tobin* was presented with a situation whereby the prejudgment interest rate, which was governed by Massachusetts law, was significantly higher than the post-judgment interest rate afforded by federal law; the parties disputed the rate that should apply to the time period between the original May 2006 entry of judgment on the jury verdict and the second amended judgment issued in April 2007. *Id.* at 145 & n.35. The court observed that the federal and state law claims were "substantively identical" and declined to allow Liberty Mutual to "rely on federal case law establishing the start date for post-judgment interest to deny Tobin a *more favorable result* under state law." *Id.* at 147 (emphasis added). The court then proceeded to address the relevant post-judgment interest date pursuant to Massachusetts law, concluding that prejudgment interest ran until the entry of final judgment in April 2007. *Id.* at 147-48. Notably, in *Tobin*, as well as in the case it relied upon in reaching its result, the later judgment from which post-judgment interest began was an amended judgment, rather than a denial of a post-judgment motion as in the case at hand. *Id.* at 145 & n.36, 147; *see Foley v. City of Lowell*, 948 F.2d 10, 16-17 (1st Cir. 1991).

then affirmed that judgment. *See Cianchette*, 2019 ME 87, ¶¶ 1, 38, 209 A.3d 745. The present situation is not one in which "post-trial proceedings reveal the instability of the plaintiffs' initial success, thereby justifying a later date for accrual of post-judgment interest to commence." *Marshall*, 866 F.2d at 523 (footnote omitted); *id.* at 523 n.4; *see* Fed. R. App. P. 37; M.R. App. P. 13(e). Second, delaying the running of post-judgment interest until a post-judgment motion is denied could incentivize non-prevailing parties to file post-judgment motions in order to reduce interest costs. The gap between an initial judgment and a trial court's ruling denying a post-trial motion—three months in the present case—can amount to a significant sum on a large money judgment, as here. *See Marshall*, 866 F.2d at 522-23 (four-month period between court's judgment and denial of motion for judgment notwithstanding the verdict or new trial); *Ramirez v. IPB, Inc.*, 35 F. Supp. 2d 779, 780 (D. Kan. 1998) (over three-month period between court's judgment and denial of motion for a new trial). "When [post-judgment] motions are unsuccessful, equity strongly favors awarding the plaintiff post-judgment interest during the pendency of the motions because the defendant, a judgment debtor, had possession and control of the funds during that period." *Marshall*, 866 F.2d at 524.

2.      Tucker's Cross-Appeal

[¶29]   Having determined that entry of judgment occurred in March rather than June 2018, we turn now to Tucker's cross-appeal contending that the court's March 5, rather than the March 15, order served as the entry of judgment from which post-judgment interest began to accrue.  Although there were entries reflected in the docket on both March 5 and March 15, only the latter entry is relevant for our consideration here.

[¶30]   Maine Rule of Civil Procedure 58 governing entry of judgment states, "Unless the court otherwise directs and *subject to the provisions of Rule 54(b)*, judgment upon the verdict of a jury shall be entered forthwith by the clerk."  M.R. Civ. P. 58 (emphasis added).  Rule 54(b) requires that if a trial court enters judgment on fewer than all claims—as the court did in its March 5 order when it resolved Tucker's claims but left Peggy and Eric's cross-claim to be resolved in its March 15 order—it may do so "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  M.R. Civ. P. 54(b)(1).  Otherwise, the "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."  *Id.*  The court did not expressly include language in its March 5 order finding that there was "no just reason for

delay." *Id*; *see Marshall*, 866 F.2d at 523 (applying the parallel Federal Rules of Civil Procedure and observing, "We agree . . . that there is a difference between cases in which, because of a lack of a Rule 54(b) determination, the clerk is without authority to enter judgment and cases in which judgment is entered 'forthwith' by the clerk, in accordance with Fed. R. Civ. P. 58, upon a jury verdict without awaiting direction by the court.").

[¶31] Moreover, the court expressed its clear intent that post-judgment interest not begin to run until it entered the final judgment on March 15. In its March 5 order, the court stated, "This order shall not constitute a final judgment because judgment has not [been] entered on [Peggy and Eric's] equitable counterclaim for [dis]sociation," and "Pr[e]judgment interest shall run from the date the complaint was filed to the entry of final judgment at 3.65%. Post-judgment interest shall run from the entry of final judgment at 7.76%." It then specified in its March 15 order, "This represents final judgment on all the claims in this case." In sum, although the docket reflects judgments entered on March 5 and 15, March 15 serves as the relevant entry of judgment upon these facts from which post-judgment interest began to run. *See* 14 M.R.S. § 1602-C(2).

The entry is:

Judgment affirmed.

George J. Marcus, Esq. (orally), and Trey R. Milam, Esq., Marcus Clegg, Portland, for appellants Peggy A. Cianchette et al.

Timothy H. Norton, Esq. (orally), and Jason M. Rice, Esq., Kelly, Remmel & Zimmerman, Portland, for appellees Tucker J. Cianchette, et al.

Cumberland County Superior Court docket number CV-2016-249
FOR CLERK REFERENCE ONLY